725 A.2d 733

**Julie Susan LEVEY, Appellee,**

v.

**Roland DeNARDO and Mary DeNardo, Appellants,**

**and**

**Kenneth Manley, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1997.

Decided Feb. 25, 1999.

Charles W. Craven, Philadelphia, for Roland and Mary DeNardo.

Barry Krengel, Philadelphia, for Julie Susan Levey.

Before FLAHERTY, C.J., and ZAPPALA, CAPPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## *OPINION*

CAPPY, Justice.

This appeal raises the issue of whether the grant of a new trial was properly limited to damages only. Subsumed in that issue is the question of whether the trial court erred in refusing to instruct the jury on the sudden emergency doctrine. For the reasons that follow, we find that it was error to refuse to instruct the jury that the sudden emergency doctrine could apply to Appellant Roland DeNardo and that, therefore, a new trial should be awarded on liability as well as damages.

The instant litigation arose from a motor vehicle collision involving three vehicles. The accident at issue occurred on

December 20, 1990 at approximately 1:00 p.m. On that date, Appellee Levey was proceeding south on Wallingford Road in Delaware County. Travelling in the same direction behind her was Appellant Roland DeNardo. The speed limit on Wallingford Road is 25 m.p.h. At the time of the accident, the road was wet. Both Levey and DeNardo testified that as they rounded a curve in the roadway which sloped downward, they observed Appellee Manley traveling toward them in the opposite lane. Both also observed Manley stop in his lane of travel and then suddenly, without warning, turn left into the path of Levey. Levey applied her brakes, but was unable to avoid colliding with Manley's vehicle. DeNardo applied his brakes, but skidded on the wet surface and impacted Levey's vehicle and then Manley's vehicle.

Levey initiated the instant suit against both Manley and DeNardo. Prior to trial, Levey settled her claim against Manley. The action against DeNardo proceeded before a jury. In its charge to the jury, the trial judge instructed the jury that Levey could not be found to be contributorily negligent because she was protected by the sudden emergency doctrine. The judge refused DeNardo's request that the sudden emergency doctrine also be applied to him and instructed the jury, instead, that it should determine DeNardo's liability by application of the assured clear distance ahead rule only. In short, the judge instructed the jury that the rule required that DeNardo operate his vehicle at such a rate of speed and in such a manner that he can always stop it within the distance that he can clearly see. (N.T. 9/14/94 p. 58).

The jury returned a verdict in favor of Levey in the amount of $1,320,000.00. Significantly, the jury apportioned liability as follows: 80% attributable to DeNardo's negligence and 20% attributable to Manley's negligence. Upon consideration of post-trial motions filed on behalf of the DeNardos, the trial court determined that the verdict was, indeed, excessive and accordingly granted a new trial limited to the issue of damages. In a cross-appeal filed in the Superior Court, Levey argued that the trial court erred in finding that the verdict was excessive. The DeNardos argued (1) that the new trial

should not be limited to damages only but should also include the issue of liability as the two issues are inextricably intertwined in this matter; (2) that the apportionment of liability between DeNardo and Manley was unsubstantiated; and (3) that it was error to instruct the jury on the assured clear distance ahead rule yet refuse the charge on the sudden emergency doctrine. The Superior Court panel, in a two-to-one memorandum decision, ultimately affirmed the order of the trial court. Judge Cavanaugh filed a concurring and dissenting opinion agreeing with the majority's determination that a new trial on the issue of damages was warranted and that the trial court properly refused to charge on the sudden emergency doctrine. Judge Cavanaugh disagreed, however, with the conclusion that the issues of damages and liability were not intertwined and with the conclusion that the apportionment of liability was rational.

Appellants argue to this court, as they did below, that it was error to refuse the charge on the sudden emergency doctrine and that a new trial should be awarded on both damages and liability because the two are inextricably intertwined and because the jury's apportionment of liability was not rationally based on the evidence.

█ █ We shall first address Appellants' contention regarding the sudden emergency doctrine. In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this court to determine whether the record supports the trial court's decision. *Lockhart v. List*, 542 Pa. 141, 665 A.2d 1176, 1179 (1995). In so reviewing, we are mindful that a trial court is bound to charge only on that law for which there is some factual support in the record. *Id.*

█ In *Lockhart*, we reiterated at some length the fundamentals of both the assured clear distance ahead rule and the sudden emergency doctrine. As noted there, the assured clear distance ahead rule requires a motorist to be capable of bringing his or her vehicle to a stop within the distance that he or she can clearly see.[1] The rule is not, however, necessar-

---

1. The assured clear distance ahead rule as codified in the Vehicle Code, 75 Pa.C.S. § 3361 specifically provides:

ily violated in every instance where a motorist is unable to safely bring his or her vehicle to a stop.

> "Assured clear distance ahead" means only what it says: a clear distance that is assured, that is, one that can reasonably be depended on. The rule does not mean that the motorist must carry in his mind every possible series of combinations which could conspire against him, and that he must transport ready-made solutions to overcome all fortuitous hazards which suddenly face him. *Assured* does not mean *guaranteed.*

*Fleischman v. City of Reading,* 388 Pa. 183, 130 A.2d 429, 431 (1957)(emphasis in the original). As this court said in *Lockhart:*

> The assured clear distance ahead rule has never been interpreted by this Court as imposing a duty upon a driver to anticipate any and all possible occurrences, however remote. Rather, a driver is required to anticipate only that which is reasonable. In short, the assured clear distance ahead rule simply requires a driver to control the speed of his or her vehicle so that he or she will be able to stop within the distance of whatever *may reasonably be expected* to be within the driver's path.
>
> The sudden emergency doctrine, on the other hand, is available as a defense to a party who suddenly and unexpectedly finds him or herself confronted with a perilous situation which permits little or no opportunity to apprehend the situation and act accordingly. The sudden emergency doctrine is frequently employed in motor vehicle accident cases wherein a driver was confronted with a

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

perilous situation requiring a quick response in order to avoid a collision. The rule provides generally, that an individual will not be held to the "usual degree of care" or be required to exercise his or her "best judgment" when confronted with a sudden and unexpected position of peril created in whole or in part by someone other than the person claiming protection under the doctrine. The rule recognizes that a driver who, although driving in a prudent manner, is confronted with a sudden or unexpected event which leaves little or no time to apprehend a situation and act accordingly should not be subject to liability simply because another perhaps more prudent course of action was available. Rather, under such circumstances, a person is required to exhibit only an honest exercise of judgment. The purpose behind the rule is clear: a person confronted with a sudden and unforeseeable occurrence, because of the shortness of time in which to react, should not be held to the same standard of care as someone confronted with a foreseeable occurrence. It is important to recognize, however, that a person cannot avail himself of the protection of this doctrine if that person was himself driving carelessly or recklessly.

*Lockhart*, 665 A.2d at 1180 (emphasis in the original) (citations and footnotes omitted).

In *Lockhart*, the plaintiff, Alix Lockhart, was proceeding downhill through a series of curves and as she exited the final curve, she collided with a garbage truck that was positioned diagonally across her lane of travel. Finding that the evidence presented in *Lockhart* did not clearly establish that Mrs. Lockhart was operating her vehicle at an unsafe speed and therefore, that she was not operating her vehicle in violation of the assured clear distance ahead rule, we held there that it was error for the trial court not to give an instruction on the sudden emergency doctrine. In so holding, we distinguished two prior decisions where the court had held that the sudden emergency doctrine was not applicable since in those decisions there was testimony which established that the party seeking the defense was driving at a speed which

would render him or her unable to stop within their respective assured clear distances.

Appellants essentially argue that this court's recent decision in *Lockhart* supports their position. Appellants submit that at the point when Manley suddenly turned into Levey and De-Nardo's lane of travel an emergency situation existed not only for Levey but also DeNardo. In upholding the trial court's ruling, the Superior Court panel distinguished our *Lockhart* decision from the instant matter on the basis that *Lockhart* involved only one driver whereas here there were two drivers proceeding in the same direction. Based upon DeNardo's testimony that he was unable to avoid colliding with Levey, the Superior Court then determined that the evidence established that DeNardo's negligence caused the collision. The court also concluded that one car traveling behind another could not present an emergency situation. In so concluding, the court relied upon *Elder v. Orluck*, 334 Pa.Super. 329, 483 A.2d 474 (1984) and a hypothetical discussed in *Cannon v. Tabor*, 434 Pa.Super. 232, 642 A.2d 1108, 1115 n. 4 (1994).

Both of those cases are, however, inapposite. Moreover, neither of them explicitly holds, as suggested by the Superior Court, that where, as here, an accident results involving drivers traveling in the same direction, only the first driver can rely on the defense of the sudden emergency doctrine. In *Elder*, there was no evidence to suggest that either driver was confronted with a sudden emergency. Indeed, Orluck's defense in that case was that Elder's tail lights were inoperable, not that he was confronted with an object which suddenly darted in front of his vehicle. In *Cannon* the hypothetical involved a situation where the first driver claimed that a deer ran in front of her causing her to abruptly stop whereupon the second driver collided with her. The second driver claimed, however, that there was no deer. The hypothetical concluded that since the facts there did not conclusively establish the existence of an emergency, the jury would first have to determine whether such an emergency did exist and the first driver, therefore, protected by the sudden emergency defense; and then, whether the second driver was in violation of the

assured clear distance ahead rule "by following too closely to a car traveling in the same direction, an essentially static object." Significantly, the second driver in this hypothetical disputed the fact of any sudden emergency and thus, never himself sought an instruction on that doctrine. Moreover, in *Lockhart*, we cautioned against such rigid adherence to the distinction between static and moving objects in determining the applicability of the assured clear distance ahead rule and the sudden emergency doctrine. *Lockhart*, 665 A.2d at 1182–1183. Accordingly, we cannot agree with the Superior Court's reliance in the instant matter on the hypothetical in *Cannon*.

To reiterate, the assured clear distance ahead rule requires only that a motorist drive in a prudent manner so that he or she is capable of stopping within the distance of whatever may reasonably be anticipated. *Lockhart*, 665 A.2d at 1180. Thus, the mere fact that DeNardo was unable to stop his vehicle before colliding with Levey does not in itself establish his negligence. Just as in *Lockhart*, there is insufficient evidence here to clearly establish that DeNardo was driving in an unsafe manner in violation of the assured clear distance ahead rule. Levey testified that she did not know how fast DeNardo was traveling nor did she know the distance between her vehicle and DeNardo's. The sole testimony respecting this critical issue was adduced from DeNardo. Significantly, he testified that as he rounded a curve in the roadway, he saw Manley approaching in the opposite lane of travel. At that point, Manley's vehicle was approximately 300 to 400 feet away from DeNardo and DeNardo was approximately 50 to 60 feet behind Levey. DeNardo observed Manley stop his vehicle and then suddenly turn left directly in the path of Levey. When Manley impacted Levey, Denardo was approximately 35 to 40 feet behind Levey. DeNardo applied his brakes but began to skid on the wet surface of the roadway. These facts simply do not unequivocally establish that the collision between DeNardo and Levey was caused by DeNardo's own negligence. Accordingly, we find it was error for the trial court not to instruct the jury that DeNardo, too,

could be judged on the basis of the defense of the sudden emergency doctrine.

The decision of the Superior Court is reversed and the case is remanded for a new trial on the issue of liability as well as damages.[2]

Justice NIGRO concurs in the result.

**2.** Given our disposition of this first issue, it is unnecessary for us to address Appellants' remaining arguments.