**O'Kane v. Bacon**

184

*Edward F. Silva,* for plaintiff.
*Frank A. Baker,* for defendant.

BLACK, *J.,* November 18, 2005—Before the court is the motion of the plaintiff, Laura M. O'Kane, for post-trial relief following a jury verdict in favor of the defendant, David J. Bacon. In her motion the plaintiff seeks a new trial of this motor vehicle/pedestrian accident case. She contends that the court erred (a) in refusing her motion for mistrial after defense counsel asked a witness whether the defendant had been issued any traffic citations for the accident, a question that went unanswered after the objection of plaintiff's counsel was sustained; and (b) in declining to instruct the jury on the assured clear distance ahead rule.[1] For the reasons stated, we find no merit in the plaintiff's contentions and therefore deny her motion for post-trial relief.

---

1. The motion for post-trial relief alleges other errors, but they were not briefed and are therefore waived.

## FACTUAL AND PROCEDURAL HISTORY

On the evening of August 23, 1999, at approximately 10:20 o'clock p.m., the plaintiff, then age 16, was struck by a vehicle driven by the defendant. As a result of the accident the plaintiff sustained serious and permanent injuries. At the time of the accident, the plaintiff was attempting to cross Route 378, a four-lane highway, on foot, at a point where the highway traverses the Hill-to-Hill Bridge in Bethlehem, Pennsylvania. The plaintiff and her mother, Linda O'Kane, were leaving a music festival known as Musikfest in the City of Bethlehem. They had watched the fireworks display that closed Musikfest from a ramp leading to the bridge. The four lanes of traffic over the bridge, two southbound and two northbound, were separated from the bridge walkway by barricades 40 inches high when measured from the sidewalk and 52 inches high when measured from the surface of the highway.

When they decided to depart, the plaintiff and her mother could have taken a pedestrian walkway that went under the bridge. However, they instead climbed over a barricade and attempted to cross the four lanes of traffic. The plaintiff's mother had said to the plaintiff just before they scaled the barricade, "Laura, no. It's a busy street. We shouldn't do it."[2] A police officer on duty on the bridge had specifically warned the plaintiff and her mother that they should not attempt to cross the highway, but this directive was ignored. The plaintiff had no

_____
2. Notes of Testimony (N.T.) 5/16/05, 45.

recollection of what happened after she decided to cross the highway.

The two-day jury trial began on May 16, 2005. The plaintiff stipulated at trial that she had been negligent in attempting to cross the four-lane highway and that her negligence was a factual cause of the accident.

The sole non-party eyewitness who testified, Lonnie White, explained that the accident occurred almost directly in front of him. He was standing on the bridge walkway when he observed the plaintiff and her mother climb over the barricade and proceed onto the highway. According to him, they "walked fast" or ran onto the highway across the two northbound lanes of travel.[3] As they approached the double-yellow centerline, the plaintiff's mother stopped and reached out with her hand to slow down the plaintiff. However, the plaintiff continued across the centerline into the left-hand southbound lane. At this point the plaintiff was struck by a van operated by the defendant in a southerly direction in the left-hand southbound lane. Mr. White reported to the responding police officer that the plaintiff "ran directly into the path of [defendant's vehicle] traveling south on the bridge in the left lane."[4] He reaffirmed this recollection in his trial deposition. Mr. White explained that the plaintiff had not stopped, but instead went directly into defendant's lane of travel. "It was continuous," Mr. White explained; the plaintiff "basically kept going" into defendant's lane of travel.[5] The plaintiff was struck almost immediately

---

3. N.T. 10/21/04 videotaped deposition of Lonnie White, 24.

4. *Id.* at 12.

5. *Id.* at 19.

after entering the highway and crossing the centerline. She was only on the highway itself for "a couple of seconds" before being struck.[6]

The Bethlehem Police Department investigated the accident. Sgt. Robert Meixell, the lead investigator, was called by the plaintiff as a trial witness. In response to questions from the plaintiff's counsel, he opined that the defendant had been traveling at approximately 51 miles per hour when his van struck the plaintiff. He based his opinion on the assumption that the defendant had fully applied his brakes from the moment of impact until his vehicle came to rest. The defendant testified, however, that he had eased up on the brakes after impact because the plaintiff was on the hood of his vehicle and he did not want her to fall off.[7]

During the defendant's testimony, defense counsel asked him whether he had ever been cited by the police for any violations as a result of the accident. Before the question could be answered, plaintiff's counsel objected, and the objection was sustained. The defendant never answered the question. Plaintiff's counsel then moved for mistrial. This motion was denied.

At the close of the testimony the court charged the jury on the law of negligence including the concept of negligence per se. The court declined to charge the jury on the assured clear distance ahead rule, as requested by plaintiff's counsel, on the ground that the evidence did not support a finding that this rule had been violated.

---

6. *Id.* at 24.
7. N.T. 5/16/05, 157-58.

On May 17, 2005, the jury returned a special verdict finding that both parties were causally negligent. The jury assigned 85 percent of the total causal negligence to the plaintiff and 15 percent to the defendant. As a result, a molded verdict was entered in favor of defendant.

The plaintiff now seeks post-trial relief in the form of a new trial.

## DISCUSSION

### I. *The Motion for Mistrial*

During the trial the defendant was called as witness by plaintiff's counsel. When defense counsel had an opportunity to question the defendant, the, following exchange took place:

"Q. [By defense counsel]: You were never cited by the police for any violations in this accident, were you?

"[By plaintiff's counsel]: Objection, your honor.

"[By the court]: Sustained."

The question was never answered. The entire episode consisting of question, objection and trial judge's ruling consumed less than a minute. Nevertheless, immediately following this exchange, plaintiff's counsel moved for a mistrial. After argument at side-bar, the motion for mistrial was denied.

The plaintiff contends that evidence of the lack of any traffic citation is inadmissible and that defense counsel's leading question irreversibly tainted the jury. He argues that the trial court should have granted the motion for mistrial for this reason.

Initially, we note that the plaintiff did not assign this specific exchange as error in her motion for post-trial

relief. Instead the plaintiff asserted that the court had erred in refusing to grant a motion for mistrial during the questioning of Bethlehem Police Sergeant Robert Meixell regarding the issuance of traffic citations to the defendant.[8] In point of fact, Sergeant Meixell was never asked about any traffic citations. The question referred to by plaintiff's counsel in his brief and at oral argument was addressed to the defendant himself. Therefore, the issue has been waived. *Lane Enterprises Inc. v. L.B. Foster Co.,* 551 Pa. 306, 710 A.2d 54 (1998); *Standard Pipeline Coating Co. Inc. v. Solomon & Teslovich Inc.,* 344 Pa. Super. 367, 377, 496 A.2d 840, 845 (1985).

Even if the issue had been properly preserved, there are several reasons why it cannot form the basis for a new trial. The decision to grant or deny a motion for mistrial rests primarily in the sound discretion of the trial court. The reason is that the trial judge is in the best position to observe the atmosphere in which a trial is being conducted and to determine whether a statement in the heat of trial by counsel or a witness has had a prejudicial effect on the jury. *Narciso v. Mauch Chunk Township,* 369 Pa. 549, 552, 87 A.2d 233, 234 (1952). Absent a clear abuse of discretion, the ruling of the trial judge ought not to be disturbed. *Abrams v. Philadelphia Suburban Transportation Co.,* 438 Pa. 115, 119, 264 A.2d 702, 704 (1970); *Speer v. Barry,* 349 Pa. Super. 365, 372, 503 A.2d 409, 413 (1985).

Whether a court has abused its discretion in refusing a motion for mistrial must be determined by the circumstances under which the statement was made and the pre-

---

8. Motion for post-trial relief by plaintiff Laura O'Kane.

cautions taken to prevent its having a prejudicial effect on the jury. *Martin v. Philadelphia Suburban Transportation Co.,* 435 Pa. 391, 394, 257 A.2d 535, 537 (1969). The remedy of a mistrial is an extreme one, and is required "only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." *Commonwealth v. Johnson,* 719 A.2d 778, 787 (Pa. Super. 1998) (citations omitted); see also, *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 466, 756 A.2d 1116, 1121 (2000); *Carpinet v. Mitchell,* 853 A.2d 336, 340-41 (Pa. Super. 2004).

In the instant case, the unanswered question posed by defense counsel was not so inflammatory or prejudicial as to prevent a fair trial. The question, objection and ruling altogether consumed less than a minute and were a very minor part of the case. The question itself was not so egregious as to warrant a mistrial, and the issue of possible citations was adequately handled by a curative instruction. The jury verdict, in which the jury found the defendant to have been negligent, demonstrated the validity of the trial court's approach.

Although plaintiff's counsel did not request a curative instruction, we stated in our closing instructions to the jury that no evidence had been presented as to whether or not the police cited either party for a violation of the Motor Vehicle Code. We explained the reason, *i.e.,* that such evidence was irrelevant to the issue of negligence, which was for the jury to decide. The full instruction on this point was as follows:

"Now, there has been no evidence presented in this case as to whether or not the police [who] have investi-

gated this accident, cited either the plaintiff or the defendant for any violation of the Motor Vehicle Code and that is for a very simple reason.

"Evidence of that nature would be irrelevant because the decision as to whether a party is negligent in a civil case is for you the jury to determine, not for anyone else, so we do not consider whether or not any citations were issued. It's totally irrelevant and there has been no evidence in this case for that very reason." [9]

Plaintiff's counsel did not object to this instruction; nor did he request an earlier instruction on this point. The instruction was given as part of the final instructions in this relatively short two-day trial, rather than earlier, because this was the most effective place for the instruction to be given.

There is a presumption that a jury has followed the court's instructions. *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division,* 781 A.2d 1263, 1275 (Pa. Super. 2001). In this case there is more than a presumption. The jury found in answering special interrogatories that the defendant was in fact negligent and that his negligence was a factual cause of the accident. [10] Therefore, any claim of error in the trial judge's refusal to grant a mistrial is moot. The question whether a citation was issued to the defendant went to the question of his negligence The absence of a citation might tend to suggest that he was not negligent. However, the jury found just the opposite, *i.e.,* that he *was* negligent. Thus, the

---

9. N.T. 5/17/05, 43.
10. See verdict slip, 5/17/05.

plaintiff's claim that the jury was irreversibly tainted by the question of defense counsel is demonstrably false.

Finally, although defense counsel did not pursue it, there was a strong argument for the admissibility of the no-citation evidence in the particular circumstances of this case. The reason for the general rule prohibiting reference to traffic citations is that it allows the police officer to give an opinion as to negligence, *i.e.,* whether the defendant was operating his vehicle in accordance with the Motor Vehicle Code. The issue of negligence, as we indicated in our jury charge, is for the jury to determine, not the police officer. However, in this case *plaintiff's counsel* elicited opinion evidence from Sergeant Meixell that, based upon his investigation of the accident scene, the defendant had been operating his motor vehicle at a speed of 51 miles per hour where the maximum lawful speed was 30 miles per hour. In this context, where the police officer was asked by plaintiff's counsel to offer an opinion that the defendant had been operating his vehicle at an unlawful speed, it was not so unreasonable for defense counsel to challenge the officer's opinion by pointing out that he had not cited the defendant for a speeding violation. In this case the objection of plaintiff's counsel was immediately sustained and defense counsel did not pursue the matter further. However, the question posed by defense counsel as to the absence of a citation was not in these circumstances an egregious violation, if a violation at all, of the rules of evidence. The plaintiff's counsel had opened the door by eliciting testimony from Sergeant Meixell that the defendant had operated his vehicle in violation of the Motor Vehicle Code. Thus, the rationale for holding in-

admissible questions regarding the issuance or non-issuance of a citation no longer applied. In this respect, the case at bar is distinguishable from the cases relied on by the plaintiff where reference to the issuance or non-issuance of a traffic citation was held inadmissible. In none of these cases had the police officer himself been asked to render an opinion by opposing counsel as to whether the Motor Vehicle Code had been violated. See *e.g., Gatling v. Rothman,* 267 Pa. Super. 566, 407 A.2d 387 (1979) (no opinion testimony by police officer) and *Shepard v. Martin Century Farms,* 245 Pa. Super. 552, 369 A.2d 765 (1977) (same).

For all of these reasons, the trial court's refusal to grant the plaintiff's motion for mistrial was a proper exercise of its discretion and is not a sufficient basis for ordering a new trial.

## II. *The Jury Instructions on Negligence*

The jury was charged on negligence, including negligence per se and the sudden emergency doctrine, in accordance with the Pennsylvania Suggested Standard Jury Instructions.[11] The charge considered as a whole properly instructed the jury on this issue and was fair to both parties. Significantly, the jury found the defendant to have been negligent, so that the plaintiff's objection to the negligence charge is a moot point.

The plaintiff contends that the jury should also have been instructed on the assured clear distance ahead rule.

---

11. N T. 5/17/05, 41-44; Pennsylvania Suggested Standard Jury Instructions 3.01, 3.02, 3.18 and 3.30.

However, the trial evidence did not support a finding that the defendant had violated this rule. Therefore, any reference to this rule was unnecessary and had the potential of causing confusion. It is well-settled that "a trial court is bound to charge only on that law for which there is some factual support in the record." *Levey v. DeNardo,* 555 Pa. 514, 517, 725 A.2d 733, 735 (1999) (citing *Lockhart v. List,* 542 Pa. 141, 147, 665 A.2d 1176, 1179 (1995)).

Under the assured clear distance ahead rule, the operator of a motor vehicle is not to drive "at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead." [12] Under the evidence presented by both parties, this was essentially a "dart-out" case in which the plaintiff thrust herself into the defendant's lane of travel a moment before impact. Such a case does not bring into play the assured clear distance ahead rule. *Unangst v. Whitehouse,* 235 Pa. Super. 458, 344 A.2d 695 (1975) (holding that the assured clear distance ahead rule does not apply where another vehicle darts into the driver's path within his assured clear distance).

In discussing the assured clear distance ahead rule, our Supreme Court has stated:

" 'Assured clear distance ahead' means only what it says: a clear distance that is assured, that is, one that can reasonably be depended on. The rule does not mean that the motorist must carry in his mind every possible series of combinations which could conspire against him, and

---

12. 75 Pa.C.S. §3361.

that he must transport ready-made solutions to overcome all fortuitous hazards which suddenly face him. *Assured* does not mean *guaranteed." Fleischman v. City of Reading,* 388 Pa. 183, 185-86, 130 A.2d 429, 431 (1957). (emphasis in original)

The most common application of the rule is where there is a static or essentially static object, such as a person or another vehicle, in the driver's path. By way of contrast, where a person or vehicle suddenly moves into the driver's path immediately before impact, the rule does not apply. Instead, the driver's conduct is governed by the sudden emergency rule, *i.e.,* that a driver's duty to respond must be determined in light of the circumstances and the time he had to react. *Cunningham v. Byers,* 732 A.2d 655, 658 (Pa. Super. 1999).

In discussing jury instructions, the Superior Court stated in Cunningham that "[g]enerally a jury should not be instructed on both the assured clear distance ahead rule and the sudden emergency doctrine since the two are mutually exclusive. This is based on the rationale that the assured clear distance ahead rule applies to essentially static or static objects including vehicles moving in the same direction, while the sudden emergency doctrine applies only to moving instrumentalities thrust into a driver's path of travel." *Id.* at 658. (citations omitted) (footnote omitted)

In *Lockhart, supra* at 154, 665 A.2d at 1182, the Supreme Court made the same distinction, noting that "this court agrees generally with the Superior Court's distinction between fixed and moving objects since it is quite reasonable to hold a person accountable for colliding with

a stationary object on the road which is, and has been, in plain view for everyone to see, *while it is quite a distinct matter when an object or instrumentality suddenly moves into the path of an oncoming vehicle.*" (emphasis added)

Although there are unusual cases where application of the assured clear distance ahead rule to moving objects can be justified, this is not such a case. The evidence was undisputed that the plaintiff entered the defendant's lane of travel a moment before the impact. The sole non-party witness, Lonnie White, testified by videotape deposition that the plaintiff "ran directly into the path of (defendant's vehicle) traveling south on the bridge in the left lane." [13] The plaintiff, according to Mr. White, was only on the highway for "a couple of seconds" and was struck almost immediately upon crossing the center line into the defendant's southbound lane of travel. [14] Plaintiff's mother confirmed that only "a few seconds" elapsed from the time the plaintiff climbed over the barrier, crossed the two lanes of northbound travel, and stepped into the defendant's southbound lane of travel. [15] The defendant testified that the plaintiff was moving when she suddenly appeared in front of him "just before impact." [16] The plaintiff herself had no recollection of the accident.

From this evidence it is clear that the plaintiff was not a static object in the defendant's lane of travel. She was not present in that lane of travel for any significant length

13. N.T. 10/21/04 videotaped deposition of Lonnie White, 12.
14. *Id.,* 24.
15. N.T. 5/16/05, 75.
16. *Id.,* 143-44, 146.

of time. In the language of the *Cunningham* court, the plaintiff "thrust [herself] into [defendant's] path of travel" immediately before the impact. *Cunningham,* 732 A.2d at 658. Because the plaintiff moved suddenly into the defendant's assured clear distance, the defendant did not have the benefit of that distance to stop. Under these circumstances it would have been improper to charge the jury on the assured clear distance ahead rule.

In an analogous case our Supreme Court stated the following:

"Assured clear distance ahead does not embrace a state of affairs where a truck lurks behind parked cars and then suddenly moves into the highway. Assured clear distance does not include a situation where a vehicle is ambushed in the shadows of other parked cars and then, without warning, charges into the street . . . .

"[W]hen the truck moved into the plaintiff's path of travel . . . the assured clear distance became un-assured. By this time, however, fate's course had been shaped beyond man's alteration." *Flesichman v. City of Reading, supra* at 186, 130 A.2d at 431-32.

In the instant case the defendant was also confronted with a sudden emergency. The plaintiff suddenly and without warning scaled the barrier separating the pedestrian walkway from the highway and darted into his lane of travel. It would be patently unreasonable to apply the assured clear distance ahead rule under such circumstances. The relevant doctrine for the jury to consider was the sudden emergency rule, on which the jury was charged. Therefore, the court's charge to the jury on the issue of negligence was proper.

Plaintiff's counsel makes reference to the testimony of Sergeant Meixell that an average person walks at the rate of three miles per hour, and that if the plaintiff had been walking at this pace, it would have taken her five seconds to move from the barrier across the two lanes of northbound travel into the southbound lane in which the defendant was operating his van. Plaintiff's counsel argues that, based on this testimony, the assured clear distance ahead rule, rather than the sudden emergency rule, applied. This argument is specious. First, there is no evidence that the plaintiff was walking at such a slow pace. The evidence indicates that she was walking rapidly or running. Second, the relevant time frame does not begin when she climbed over the barrier, but when she entered the *southbound* lane in which the defendant was driving. It was only when she entered the southbound lane that she intruded into the defendant's assured clear distance ahead. The plaintiff's movement into that lane of travel occurred just momentarily before she was struck. As we have seen, the assured clear distance ahead rule does not apply in such situations.

Furthermore, since the jury found that the defendant was negligent, any error in the jury instructions on negligence did not harm the plaintiff. Thus, even it if the jury should have been instructed on the assured clear distance ahead rule, the court's refusal to so instruct was at most a harmless error. The effect of the assured clear distance ahead rule is to assign negligence to a party who is driving too fast for conditions. In the present case the plaintiff presented evidence that the defendant was speeding before the impact. The jury obviously accepted this evidence because it specifically

found that the defendant was negligent and that his negligence was a factual cause of the accident. Given these jury findings, an instruction on the assured clear distance ahead rule would not have made any difference in the outcome of the trial.

Our conclusion on this point is consistent with the holding in *Griesel v. Seaser,* 26 D.&C.4th 289 (Berks Cty. 1996). *Griesel* was an automobile accident case in which the plaintiff contended that the trial court should have given a jury instruction on the assured clear distance ahead rule. The court determined that the plaintiff's argument was moot because the jury had found that the defendants were negligent and that their negligence was a substantial factor in the accident.

Accordingly, not only were the jury instructions on negligence proper, but even if they were not, any error in these instructions would fall into the category of harmless error.

## CONCLUSION

For all the above reasons, the plaintiff's motion for post-trial relief must be denied.

## ORDER

Now, November 18, 2005, upon consideration of plaintiff's motion for post-trial relief, after review of the parties' briefs and oral argument, and for the reasons set forth in the accompanying opinion, it is ordered that the motion for post-trial relief is denied. Judgment shall be entered on the verdict in favor of defendant against plaintiff.