J-A10014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARK BERGKVIST | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY SEARER, A. SCHULMAN, | : | No. 1782 EDA 2019 |
| INC. AND CHESTER M. GIBSON | : | |

Appeal from the Judgment Entered June 11, 2019
In the Court of Common Pleas of Chester County Civil Division at No(s):
2016-02943-TT

BEFORE:   BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 15, 2020**

Mark Bergkvist appeals from the June 11, 2019 judgment entered in favor of Appellee Jeffrey Searer in this personal injury case, after the jury found no negligence on the part of Mr. Searer.  Mr. Bergkvist contends that the trial court abused its discretion in instructing the jury on the sudden emergency doctrine.  After thorough review, we affirm.

We glean the following from the evidence adduced at trial.  On April 4, 2015, Mr. Bergkvist was driving his vehicle northbound on Lenape Road, designated as Pennsylvania Route 52, in Chester County.  Defendant Chester Gibson was sawing a felled tree into smaller logs on a hill adjacent to the roadway.  As Mr. Bergkvist approached, a two-foot-long log rolled down the

_____

[*] Retired Senior Judge assigned to the Superior Court.

hill, into a gully, and up into the road directly in front of Mr. Bergkvist's vehicle. Mr. Bergkvist applied his brakes but the front tires of his pick-up truck drove over the log. The log became lodged between the undercarriage of his truck and the road, and the vehicle stopped abruptly. A ten-foot-long scrape mark on the pavement suggested that the log may have caused the truck to stop more quickly than normally would be expected.

Mr. Searer had been traveling behind Mr. Bergkvist in the northbound direction for approximately a mile. He was familiar with the road as he traveled it daily. He testified that he was not speeding or distracted. As he rounded a curve in the road, he saw Mr. Bergkvist's truck ahead. However, it took him a moment to realize that the vehicle was stopped because its brake lights were not illuminated. When he realized the vehicle was not moving, Mr. Searer immediately applied his brakes, but could not stop in time. His vehicle struck the rear of Mr. Bergkvist's truck. Mr. Bergkvist was taken to the hospital, treated, and released, but was subsequently diagnosed with a sacroiliac joint dysfunction that required ongoing treatment for pain.

Mr. Bergkvist's vehicle was equipped with a windshield dash camera. Video captured Mr. Bergkvist's approach, the log rolling onto the roadway, his vehicle coming to an abrupt stop, and the jolt of the impact caused by Mr. Searer's vehicle. The video was played for the jury. In addition, Mr. Bergkvist's expert engineer, Kevin O'Connor, testified that the time between the log entering the roadway and the impact of Mr. Searer's vehicle was only

1.8666 seconds. He offered his opinion that the point where the two vehicles impacted was visible to motorists traveling northbound like Mr. Searer from a distance of 350 feet, and that if Mr. Searer had been attentive and driving at the speed limit, he would have had ample time to stop before colliding with Mr. Bergkvist's vehicle.

Mr. Bergkvist commenced this civil action in the Chester County Court of Common Pleas on March 28, 2016, with the filing of a complaint against Chester Gibson, Jeffrey Searer, and Mr. Searer's employer, A. Schulman, Inc. By stipulation of the parties dated October 9, 2017, A. Schulman, Inc. was dismissed from the action and removed from the caption. Prior to trial, Mr. Bergkvist and Mr. Gibson entered into a joint tortfeasor settlement agreement.

A three-day jury trial commenced on January 7, 2019. At the close of the evidence, the trial court charged the jury on both the assured clear distance ahead rule and the sudden emergency doctrine. The jury returned a verdict in favor of Mr. Searer after finding no negligence on his part. Mr. Bergkvist filed a timely motion for post-trial relief alleging, *inter alia*, that the trial court abused its discretion in charging the jury on the sudden emergency defense. After the trial court denied his motion, Mr. Bergkvist appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Mr. Bergkvist presents two issues for our review, both of which implicate the sudden emergency doctrine:

> 1. Whether a new trial is required because [the trial court] committed prejudicial error and/or an abuse of discretion when it

charged the jury with an instruction regarding the Sudden Emergency Doctrine, to which the Plaintiff objected before and after the charge to the jury, when the evidence of record established Defendant Searer did not meet his burden of proof to justify a charge on Sudden Emergency?

2. Whether the trial court abused its discretion and/or erred as a matter of law when it overruled Plaintiff's objections prior to closing, and allowed Defense counsel to make argument regarding the sudden emergency doctrine, as the record was devoid of facts or evidence that support such a charge and where the charge was unduly prejudicial.

Appellant's brief at 4.

Mr. Bergkvist claims that the trial court erred in instructing the jury on the sudden emergency doctrine as Mr. Searer did not offer sufficient evidence to trigger its application.[1] He contends that for Mr. Searer, the "sudden

---

[1] The proposed standard jury instruction for a sudden emergency provides:

13.230 * SUDDEN EMERGENCY

In this case [name of defendant] claims [he] [she] is not liable for [name of plaintiff]'s harm because [he] [she] faced a "sudden emergency" and responded reasonably under the circumstances.

In order to establish this defense, [name of defendant] must prove to you all of the following:

1. [name of defendant] faced a "sudden emergency" requiring immediate responsive action;

2. [name of defendant] did not create the "sudden emergency"; and

3. [name of defendant]'s response to the "sudden emergency" was reasonable under the circumstances.

emergency" was Mr. Berkvist's stopped vehicle, which is a normal occurrence that all drivers are expected to anticipate. The collision was caused, according to Mr. Bergkvist, by Mr. Searer's own failure to maintain a proper lookout and an assured clear distance ahead.

Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. **See Krepps v. Snyder**, 112 A.3d 1246, 1256 (Pa.Super. 2015) (internal citations and quotation marks omitted). It is our function to determine whether the record supports the trial court's decision. **See Lockhart v. List**, 665 A.2d 1176, 1179 (Pa. 1995).

With regard to alleged errors in jury instructions, the following principles inform our review. "[T]he [trial] court may charge only on the law applicable to the factual parameters of a particular case and it may not instruct the jury on inapplicable legal issues." **Pringle v. Rapaport**, 980 A.2d 159, 177 (Pa.Super. 2009) (internal quotation marks and citation omitted). "It is not the function of the trial court in charging a jury to advocate, but rather to explain the principles of law which are fairly raised under the facts of a

---

[name of defendant] must prove this defense by a preponderance of the evidence.

Pa.SSJI (Civ.) 13.320. The instruction given herein conformed to the suggested standard instruction. **See** N.T., 1/9/19, at 167.

particular case so as to enable the jury to comprehend the questions it must decide." **Drew v. Work**, 95 A.3d 324, 329 (Pa.Super. 2014) (quoting **Lockhart**, **supra** at 1179). "If the charge inaccurately describes the law, there is error." **Cunningham v. Byers**, 732 A.2d 655, 659 (Pa.Super. 1999). However, even if we conclude that the charge was erroneous, we will grant a new trial only if the jury charge might have prejudiced the appellant. **Id**.

Mr. Bergkvist alleges that the trial court should not have instructed the jury on the sudden emergency doctrine. The sudden emergency doctrine

> is applied only where the situation which arises is sudden and unexpected, and such as to deprive the actor of reasonable opportunity for deliberation and considered decision. Furthermore, it obviously cannot serve to excuse the actor when the emergency has been created through the actor's own negligence, since he cannot be permitted to shield himself behind a situation resulting from his own fault.

W. Prosser and W.P. Keeton, *The Law of Torts*, 196, 197 (5th ed. 1984) (footnotes omitted).

The doctrine operates to excuse a party from failing to exercise the usual standard of care when confronted with a sudden and unexpected position of peril created in whole or in part by someone else, and is often asserted in the context of motor vehicle accidents. Recognizing that a sudden event leaves little time for someone to fully apprehend the situation and choose the most prudent course of action, the doctrine requires only that one confronting such a situation exhibits an "honest exercise of judgment." **McKee v. Evans**, 551 A.2d 260, 273 (Pa.Super. 1988) (*en banc*). In sum, the doctrine provides that

one encountering an emergency situation should not be held to the same standard of care as someone faced with a foreseeable occurrence if he was not himself acting carelessly or negligently.

Mr. Bergkvist directs our attention to *McKee*, *supra* at 280, where this Court articulated the test for the doctrine's application. *See* Appellant's brief at 12. We held therein that a jury instruction on the doctrine is available to an individual "[(1)] who suddenly and unexpectedly finds himself confronted with a perilous situation[, (2)] that permits no opportunity to assess the danger[, (3)] if [he] respond[s] appropriately, and (4)] . . . proves that he did not create the emergency." *McKee*, *supra*, at 272-73 (citations omitted).

The party who pleads the existence of a sudden emergency bears the burden of proof on this allegation. *Drew*, at 330 (citing *Levey v. DeNardo*, 725 A.2d 733, 736 (Pa. 1999)). Importantly, "where the evidence leaves some doubt as to whether an emergency situation existed wholly independent of and not created by [the defendant's] own acts of negligence or recklessness, it is incumbent upon the trial court to submit the issue to the jury for its consideration." *Drew*, *supra* at 330 (citation and quotation marks omitted). *See also Lockhart*, *supra* at 1183 (holding that where the evidence does not conclusively establish that the party seeking the defense of the sudden emergency doctrine created the sudden emergency, the jury should be instructed on both the assured clear distance rule and the sudden emergency doctrine). *Accord Papandrea v. Hartman*, 507 A.2d 822, 826

(Pa.Super. 1986); ***Potenberg v. Varner***, 424 A.2d 1370, 1372 (Pa.Super. 1981).

As this Court pointed out in ***Drew***, ***supra*** at 330, the Supreme Court first adopted the doctrine more than 160 years ago. Initially, the sudden emergency doctrine was quite limited in its application. For many decades, one could not assert the doctrine in litigation involving an accident between two vehicles proceeding in the same direction. ***See Cunningham***, ***supra*** at 658 (explaining that vehicles moving in the same direction were viewed as essentially static objects subject to the assured clear distance rule). Rather, the doctrine was strictly reserved for situations involving instrumentalities thrust into a driver's oncoming path of travel, rather than collisions with static objects. ***Id***. More recently, our Supreme Court has declared those rules to be too rigid. ***See Lockhart***, ***supra*** (holding that whether object is moving or fixed is relevant but not dispositive of whether doctrine applies); ***see also Levey***, ***supra*** at 736 (reaffirming disapproval of inflexible application of distinction for static/moving objects). Under current Pennsylvania law, such facts are now mere considerations to be weighed in determining whether to apply the doctrine.

With the greater flexibility in the application of the sudden emergency doctrine, a tension has been created between it and the assured clear distance

rule.[2] The assured clear distance rule originated at common law and was later incorporated into our motor vehicle code. ***See*** 75 Pa.C.S. § 3310(a) ("The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway."). ***See also Cunningham***, ***supra*** at 658 (defining assured clear distance rule as requiring a driver who is traveling behind another vehicle to operate his vehicle "under such control and reduced speed when going around blind curves or hills in order to be able to stop before colliding with the rear of a stopped vehicle ahead of [him]"). As our High Court cautioned in ***Lockhart***, ***supra*** at 1180, the rule does not impose "a duty upon a driver to anticipate any and all possible occurrences, however remote[,]" but only those that "may reasonably be expected to be within his path."

Mr. Bergkvist concedes that there are circumstances where it is proper to instruct the jury on both the assured clear distance rule and the sudden emergency doctrine, but maintains that Mr. Searer failed to prove the four elements necessary to invoke a sudden emergency defense here. ***See*** Appellant's brief at 12. Specifically, Mr. Bergkvist argues that the evidence

---

[2] The interrelationship between the assured clear distance rule and the sudden emergency doctrine was poetically defined by then-Judge Eakin in ***Zangrando v. Sipula***, 756 A.2d 73, 77 (Pa.Super. 2000): "In sum, assured clear distance creates duty when one drives; the emergency doctrine excuses it should sudden peril arise."

unequivocally showed that Mr. Searer caused or contributed to the emergency by failing to keep his vehicle an assured clear distance behind Mr. Bergkvist's vehicle. Mr. Bergkvist contends that either Mr. Searer was speeding, inattentive, or following his truck too closely. Furthermore, he cites **McKee**, **supra** at 274, for the proposition that a "sudden emergency presupposes the unexpected interjection of a moving object or instrumentality into a driver's path of travel," and points to the fact that Mr. Searer was not confronted with the log in his path of travel. In Mr. Bergkvist's view, the log entering the roadway simply did not present a sudden emergency to Mr. Searer. In short, Mr. Bergkvist alleges that the trial court "erroneously charged on the sudden emergency, thereby confusing the jury, and negating the responsibility of [Mr.] Searer to adhere to the normal rules of negligence including the assured clear distance ahead rule." Appellant's brief at 16 (unnecessary capitalization omitted).

We find misplaced Mr. Bergkvist's reliance upon **McKee** for the hard-and-fast proposition that application of the sudden emergency doctrine is limited to instances where a moving instrumentality or object is injected unexpectedly into a motorist's path. The *en banc* panel of this Court in **McKee**, **supra**, recognized that "situations other than moving objects may also qualify to successfully invoke the sudden emergency doctrine," such as the sudden blocking of the road, a deer in the roadway, or the appearance of a dust cloud. **McKee**, **supra** at 274.

Furthermore, several years after **McKee**, our High Court held in **Lockhart** that the defendant driver was entitled to a sudden emergency instruction. Therein, the driver testified that she was traveling between forty and forty-five miles per hour in a fifty-five mile per hour zone, when she collided with a garbage truck that may or may not have been stopped, and it could not be determined as a matter of law that she violated the assured clear distance ahead rule. The Court found that the trial court erred when it "focus[ed] solely upon whether an obstacle was stationary or moving, in circumstances where the obstacle was not in plain view for some length of time and/or foreseeable and the person's negligence not apparent." **Id**. at 1183. The Court reasoned further that whether the object was stationary or moving was but one factor in determining whether to apply the sudden emergency doctrine.

In **Levey**, **supra**, Levey and DeNardo were driving their vehicles in the same direction when a driver traveling in the opposite direction suddenly and without warning turned left in front of Levey. Levey applied her brakes but could not stop in time to avoid a collision. DeNardo applied his brakes but, since the road surface was wet, was unable to avoid colliding with Levey and the driver who had crossed over into their lane of travel. Both Levey and DeNardo sought to invoke the sudden emergency doctrine. The trial court ruled as a matter of law that Levey could not be held contributorily negligent because of the sudden emergency doctrine, but rejected DeNardo's attempt

to invoke the defense. Instead, it charged the jury to assess DeNardo's liability by looking to the assured clear distance rule. The jury returned a substantial verdict in favor of Levey, and on appeal, this Court affirmed the trial court's ruling that DeNardo could not invoke the sudden emergency doctrine. Our Supreme Court reversed, reasoning that there was no authority precluding DeNardo, the second driver traveling in the same direction, from invoking the sudden emergency doctrine. The Court cautioned against the rigid application of the sudden emergency doctrine to moving objects only. It concluded that where the evidence did not conclusively establish that the second driver was driving unsafely in violation of the assured clear distance rule, it was error for the trial court not to instruct the jury that the second driver's conduct could be judged based on the sudden emergency doctrine.

Mr. Bergkvist's argument herein mirrors the reasoning of the trial court in *Levey*, which was rejected by the Supreme Court. He maintains that Mr. Searer, the second driver, cannot invoke the sudden emergency doctrine. He urges us to find that the assured clear distance rule alone governs whether Mr. Searer was negligent, and that Mr. Searer's vehicle struck his vehicle because Mr. Searer was traveling too closely behind him or not paying attention. In support of his contention, he points to the sound of impact heard on the dash-cam video less than two seconds after the log rolled onto the road in front of Mr. Bergkvist.

Mr. Bergkvist's argument that Mr. Searer could not avail himself of the sudden emergency defense because he did not directly encounter the obstacle, *i.e.*, the log, in his path, was rejected on similar facts by this Court in *Levey*. Moreover, the jury watched the dash-cam video recording and heard the testimony of the parties and Mr. O'Connor, and thus, could determine whether Mr. Searer faced a sudden emergency or whether his own negligent conduct created the peril. The trial court reviewed the evidence of record and concluded that it was "sufficient to support a finding of sudden emergency and [did] not conclusively establish that [Mr. Searer] caused the sudden emergency," and thus, "it was proper . . . to instruct the jury on the sudden emergency doctrine." Trial Court Opinion, 5/16/19, at 6 (adopted as Rule 1925(a) opinion). After conducting our review, we find no abuse of discretion.

Mr. Bergkvist testified to the following. As he was driving on Route 52, the road curved to the left. *See* N.T., 1/7/19, at 64; N.T., 1/8/19, at 4. He saw the log rolling down the hill and initially slowed his vehicle by removing his foot from the accelerator. He jammed on the brakes only when he realized the log was going to enter the roadway. *See* N.T., 1/7/19, at 65-66. As soon as Mr. Bergkvist ran over the log, his vehicle stopped abruptly. He then felt the jolt of Mr. Searer's vehicle striking his truck in the rear. *Id*. at 66; N.T., 1/8/19, at 6. Mr. Bergkvist was unsure whether his brakes or the log stopped his vehicle. *See* N.T., 1/8/19, at 6-7.

Mr. Bergkvist offered the expert engineering testimony of Kevin O'Connor. Mr. O'Connor maintained that there was more than 350 feet of unobstructed sight lines to the point where the crash occurred. *Id*. at 62. The expert conceded, however, that a surprised driver's reaction times vary depending on the circumstances, and that the stopping distance would be affected by whether the driver traveling behind a stopped vehicle saw brake lights illuminated. *Id*. at 78. Mr. O'Connor testified that he did not know whether the log or the brakes caused Mr. Bergkvist's vehicle to immediately stop, but acknowledged that the log was trapped under Mr. Bergkvist's vehicle and there was a ten-foot scrape mark on the road. *Id*. at 80-82. Finally, Mr. O'Connor opined that if the log had not rolled onto the roadway and become lodged between the undercarriage of Mr. Bergkvist's truck and the road, there would have been no collision. *Id*. at 85.

Mr. Searer testified that he was familiar with the roadway as he traveled it every day. On that day, he was not in a hurry, not speeding, and not distracted. *See* N.T., 1/9/19, at 89-91. As he rounded the curve, he did not see any brake lights illuminated on Mr. Bergkvist's vehicle. *Id*. at 91. Initially, he thought the vehicle was moving. Once he realized that the truck was stopped, he had little time to react. He hit his brakes, but his vehicle did not stop before rear-ending Mr. Bergkvist's truck.

We are presented with a factual situation similar to that in *Lockhart*, where a car collides with a stopped vehicle in front of him even though he

maintains that he was driving at or under the speed limit and with his attention on the road ahead. It also has many elements of **Levey**, where a second driver traveling in the same direction as the first driver rear-ended the first car when it stopped quickly because it collided with a hazard in its path. In both **Lockhart** and **Levey**, our High Court ruled that an instruction on the sudden emergency doctrine should have been given.

In this case, as in **Lockhart** and **Levey**, there was no conclusive evidence that Mr. Searer was operating his vehicle at an unsafe speed or failing to pay attention to the road ahead in violation of the assured clear distance rule. There is evidence that a log suddenly entering the roadway disabled Mr. Bergkvist's vehicle, creating an obstacle in Mr. Searer's path of travel. Since there was evidence of an emergency "independent of and not created by" Mr. Searer's negligence, to wit, the log rolling onto the roadway and immediately disabling Mr. Bergkvist's truck in front of Mr. Searer's vehicle, we find no error or abuse of discretion in the trial court instructing the jury on the sudden emergency doctrine. **See Drew**, **supra** at 330. It was for the factfinder to determine whether Mr. Searer confronted a sudden emergency created by that log, or whether Mr. Searer engaged in negligent conduct that caused or contributed to the collision. On these facts, the trial court properly charged the jury on both the assured clear distance rule and the sudden emergency doctrine.

Having concluded that the jury instruction on sudden emergency was properly given, it follows that the trial court did not abuse its discretion in permitting Mr. Searer to argue its application in closing argument. Thus. Mr. Bergkvist's second issue lacks merit.

Mr. Bergkvist's final contention is that there is no place for the sudden emergency doctrine in Pennsylvania's jurisprudence, and that it is redundant of a general negligence instruction and confusing in the context of comparative negligence. **See** Appellant's brief at 16. He urges us to jettison the doctrine and directs our attention to other jurisdictions that have done so. **Id**. at 17-18.

We note preliminarily that Mr. Bergkvist did not advance this argument below.[3] **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). He also did not identify it in his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the argument that the sudden emergency doctrine should be

---

[3] We found no indication that Mr. Bergkvist made this argument at trial or in his post-trial motion. We were unable to review Mr. Bergkvist's motion *in limine* and supporting memorandum "to Prohibit Argument, Evidence, or a Charge to the Jury Concerning the Sudden Emergency Doctrine" to determine whether he advanced this argument therein because, although the docket indicates it was filed on December 26, 2018, it is not contained in the certified record. We turned to Mr. Bergkvist's Reproduced Record, which purported to contain a copy of the motion *in limine* at page 9a, but it actually contained a different motion *in limine* seeking to preclude certain testimony from defense expert Roger E. Rozsas.

abrogated is not fairly comprised within the issues identified. Thus, it is not preserved for appellate review. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Moreover, in **Lockhart**, **supra** at n.7, our Supreme Court expressly declined an invitation to abolish the sudden emergency doctrine, rejecting many of the same arguments advanced herein, and we are bound by Supreme Court precedent.[4][5]

Judgment affirmed.

---

[4] On September 30, 2019, our Supreme Court granted allowance of appeal from our decision in **Graham v. Check**, 215 A.3d 657 (Pa.Super. 2019) (unpublished memorandum), *appeal granted* 218 A.3d 386 (Pa. 2019), on the issue: "When the Superior Court affirmed the trial court's jury instruction concerning the sudden emergency doctrine, did the court erroneously relieve the defendant motorist of his legal duty to a visible pedestrian in a crosswalk?"

[5] We observe the following. The sudden emergency doctrine was intended to apply a less onerous standard when evaluating the reasonableness of a party's conduct when faced with a sudden emergency. As the comment to Pa.SSJI (Civ.) 13.320 states, the doctrine comes into play when, "because of the shortness of time in which to form judgment in an emergency not created by his [own] negligence, [the actor] fails to act in the most judicious manner." **Noll v. Marian**, 32 A.2d 18, 19 (Pa. 1943). Over the years, however, the doctrine has operated as a defense to liability, and the proposed standard jury instruction even calls it a "defense." Yet, under present law, the defense of sudden emergency need not be pled as new matter. **See Leahy v. McClain**, 732 A.2d 619 (Pa.Super. 1999) (holding that sudden emergency is not an affirmative defense that must be pleaded as new matter in a negligence action). Perhaps, in the proper case, this anomaly will be addressed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/15/2020</u>