**Christopher DREW, Appellant**

v.

**Robert D. WORK, Administrator of the Estate of John A. Stutts, Deceased, Grange Mutual Casualty Company, and Erie Insurance Exchange, Appellees.**

Superior Court of Pennsylvania.

Argued March 5, 2014.

Filed June 30, 2014.

---

Michael W. Zimecki, Pittsburgh, for appellant.

Jennifer L. Miller, Pittsburgh, for appellee.

BEFORE: SHOGAN, OLSON and WECHT, JJ.

OPINION BY OLSON, J.:

Appellant, Christopher Drew, appeals from the judgment entered on May 3, 2013 in favor of Robert D. Work ("Work"), administrator of the estate of John A. Stutts ("Stutts").[1] We vacate and remand.

---

1. As our factual recitation states, Appellant commenced this action by filing a complaint against Stutts in the Court of Common Pleas of Elk County on June 10, 2010. Appellant's complaint alleged that he sustained injuries resulting from Stutts' negligence in causing a motor vehicle accident that occurred on September 19, 2008. The complaint also alleged

The factual and procedural background of this case is as follows. On September 19, 2008, Appellant and Stutts were involved in an accident on State Route 255 in Fox Township, Pennsylvania. The relevant segment of State Route 255 is a four-lane highway with two lanes traveling northbound and two lanes traveling southbound. Appellant pulled out of the Wal–Mart parking lot and began traveling southbound on Route 255. Stutts was slowly traveling southbound in the right lane looking for a salvage company. Appellant followed Stutts in the right lane until he switched lanes in an attempt to pass Stutts.

What occurred thereafter is disputed. Appellant testified that, when he was approximately three-quarters of the way past Stutts' vehicle, Stutts moved into the left lane of travel and collided with Appellant's vehicle. At his deposition, a transcript of which was read at trial,[2] Stutts testified that he was traveling in the left lane of travel when Appellant's "vehicle suddenly appeared to his left, cut him off, and hit

the left front fender and bumper of his car." Trial Court Opinion, 9/17/13, at 4 (citation omitted). Terrance Fulton ("Fulton"),[3] an independent eyewitness, was the only other person to testify as to the circumstances surrounding the accident. The trial court accurately summarized his testimony as follows:

> Fulton testified that as he was driving north on [State Route] 255, he saw from a distance of approximately [one-]quarter of a mile away two vehicles driving toward him—a van ultimately determined to be driven by [Appellant] and a car driven by Stutts. He observed [Appellant]'s van following the car in the right lane. According to Fulton, [Appellant]'s van moved into the left passing lane, after which the car in the right lane also moved left and cut the van off. The van swerved further left into the left northbound lane, but Fulton did not see the point of impact between the two vehicles—only that the van veered sideways and hit the guardrail on the southbound side of [State Route] 255. While Fulton testified that the van did not go

claims against Grange Mutual Casualty Company ("Grange") and Erie Insurance Exchange ("Erie") seeking benefits pursuant to coverage for underinsured motorists. Grange issued a policy that covered the vehicle in which Appellant was traveling at the time of the accident. Erie issued a policy under which Appellant was named as an insured. The claims against the insurers were not severed from the underlying tort action and, by stipulated order, the parties agreed to hold all claims asserted by and against the insurers in abeyance until the conclusion of trial and any ensuing appeals. The verdict and the judgment in this case were entered solely in favor of Work as administrator of Stutts' estate and against Appellant. Although judgment was entered in favor of Work and against Appellant, the pending and unresolved claims against the insurers precluded us from considering the judgment as a final order from which an appeal could properly be taken under Pennsylvania Rule of Appellate Procedure 341(b). Because this appeal could not move

forward, we *sua sponte* remanded this matter to the trial court. On May 23, 2014, the parties entered a stipulation pursuant to Pennsylvania Rule of Civil Procedure 229(b)(1) which discontinued without prejudice all claims against Erie and Grange and dismissed them from the case. This action made the judgment entered on May 3, 2013, a final order under Rule 341(b).

Although the insurers joined in the appellate brief filed by Work, they have not otherwise participated in post-trial proceedings or appellate litigation concerning the present claims. Thus, for convenience and clarity, we hereafter refer to the defending party in this case simply as "Stutts."

2. On March 14, 2012, Stutts passed away for reasons unrelated to this case.

3. Fulton was duly subpoenaed and ordered to appear for trial. However, he failed to appear as required and thus his deposition testimony was read into the record at trial.

into the northbound lane prior to the left southbound lane encroachment by the car, he testified that after the car cut the van off, "for whatever reason, [Appellant] swerved into oncoming traffic. Now there was nobody there. The van got sideways on him. He just headed on right into the guardrails."

Trial Court Opinion, 9/17/13, at 5 (internal citations omitted).

On June 10, 2010, Appellant filed a complaint against Stutts in the Court of Common Pleas of Elk County. Prior to trial, Work was substituted as the administrator of Stutts' estate. On May 11, 2012, Appellant submitted proposed points for charge, which included proposed jury instructions on *per se* negligence. Jury selection was held on June 8, 2012 and trial commenced on June 13, 2012. On June 14, 2012, the second day of trial, Appellant submitted supplemental proposed points for charge which included a proposed jury instruction on the sudden emergency doctrine. On June 15, 2012, the trial court conducted a charging conference at which it denied Appellant's requests for jury instructions on *per se* negligence and the sudden emergency doctrine.

On June 15, 2012, the jury returned a verdict which found both Appellant and Stutts causally negligent for the accident. The jury found that Stutts' negligence was 40% responsible for the accident and Appellant's negligence was 60% responsible for the accident. Pursuant to 42 Pa.C.S.A. § 7102 (barring recovery where the plaintiff's negligence exceeds the defendant's

negligence in personal injury cases), Appellant was unable to recover damages from Stutts. On June 21, 2012, Appellant filed a post-trial motion pursuant to Pennsylvania Rule of Civil Procedure 227.1. Appellant's post-trial motion alleged that the trial court erred by failing to charge the jury on the sudden emergency doctrine and *per se* negligence. The post-trial motion also alleged that the verdict was against the weight of the evidence. Stutts filed a post-trial motion on June 27, 2012. The trial court failed to enter an order disposing of the parties' post-trial motions, therefore, on May 3, 2013, Stutts filed a praecipe for judgment pursuant to Pennsylvania Rule of Civil Procedure 227.4(1)(b) and judgment was entered that same day.[4] This timely appeal followed.[5]

Appellant presents three issues for our review:

1. Whether the [t]rial [c]ourt erred in declining to charge the jury on the sudden emergency doctrine as requested by [Appellant] when the requested charge was both warranted by the evidence and essential to the jury's understanding of the proper standard by which to evaluate [Appellant's] conduct and determine whether his comparative negligence, if any, outweighed the causal negligence of [Stutts]?

2. Whether the [t]rial [c]ourt erred in declining to charge the jury on [Appellant's] requested [p]oints for [c]harge on negligence *per se* and the sections of the Motor Vehicle Code requiring [Stutts] to

---

4. The rule provides, in relevant part, "that the prothonotary shall, upon praecipe of a party[ ] enter judgment upon … the verdict of a jury … if … one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within [120] days after the filing of the first motion." Pa. R.C.P. 227.4(1)(b).

5. The trial court did not order a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925. However, the trial court discerned Appellant's grounds for appeal based upon Appellant's post-trial motion. Therefore, on September 17, 2013, the trial court issued an opinion addressing those issues.

keep his vehicle within a single lane and not move from that lane until the move could be made safely when the proposed charge was supported by the evidence and essential to the jury's understanding of [Stutts'] duty of care and the breach that created the sudden emergency for [Appellant]?

3. Whether the jury's verdict was against the weight of the evidence?

Appellant's Brief at 3 (internal quotation marks omitted).

 Appellant's first two issues challenge the trial court's decisions not to give specific jury instructions. As we have explained:

> Under Pennsylvania law, our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue that error in a charge will be found to be a sufficient basis for the award of a new trial.
>
> Further, a trial [court] has wide latitude in [its] choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law.

*Phillips v. Lock*, 86 A.3d 906, 916–917 (Pa.Super.2014) (citation omitted).

 "[T]he [trial] court may charge only on the law applicable to the factual parameters of a particular case and it may not instruct the jury on inapplicable legal issues." *Pringle v. Rapaport*, 980 A.2d 159, 177 (Pa.Super.2009) (internal quotation marks and citation omitted). "[I]t is not the function of the trial court in charg-ing a jury to advocate, but rather to explain the principles of law which are fairly raised under the facts of a particular case so as to enable the jury to comprehend the questions it must decide." *Lockhart v. List*, 542 Pa. 141, 665 A.2d 1176, 1179 (1995) (citation omitted).

Appellant first contends that the trial court erred by refusing to give a jury instruction on the sudden emergency doctrine. Appellant argues that his testimony, along with that of Fulton, supported application of the sudden emergency doctrine because the evidence showed that Stutts' vehicle suddenly and unexpectedly veered into the left lane of southbound traffic and struck Appellant's van. The trial court rejected this contention, concluding that Stutts' car, the alleged sudden emergency, was traveling in the same direction as Appellant's van and that, under this Court's precedent, a vehicle traveling in the same direction must be deemed a static object, and not a moving instrumentality. Accordingly, the trial court refused to instruct the jury on the sudden emergency doctrine.

Stutts defends the trial court's ruling. Like the trial court, he argues that his vehicle must be considered a static object under our case law because it was traveling in the same directions as Appellant's van. Stutts also argues that Appellant was not entitled to the requested charge because the testimony of all three eyewitnesses to the accident did not support application of the sudden emergency doctrine. We conclude that Appellant is entitled to relief on his initial claim.

We begin our analysis of Appellant's opening contention by reviewing the sudden emergency doctrine as applied in Pennsylvania, as well as the interrelationship between that doctrine and the clear

distance ahead rule.[6]

■■■ Our Supreme Court first recognized the sudden emergency doctrine 160 years ago. *See Pa. R.R. Co. v. Aspell*, 23 Pa. 147 (1854), *citing Stokes v. Saltonstall*, 38 U.S. 181, 185–186, 13 Pet. 181, 10 L.Ed. 115 (1839). More recently, our Supreme Court described the sudden emergency doctrine as follows:

> The sudden emergency doctrine ... is available as a defense to a party who suddenly and unexpectedly finds him or herself confronted with a perilous situation which permits little or no opportunity to apprehend the situation and act accordingly. The sudden emergency doctrine is frequently employed in motor vehicle accident cases wherein a driver was confronted with a perilous situation requiring a quick response in order to avoid a collision. The rule provides generally, that an individual will not be held to the "usual degree of care" or be required to exercise his or her "best judgment" when confronted with a sudden and unexpected position of peril created in whole or in part by someone other than the person claiming protection under the doctrine. The rule recognizes that a driver who, although driving in a prudent manner, is confronted with a sudden or unexpected event which leaves little or no time to apprehend a situation and act accordingly should not be subject to liability simply because another perhaps more prudent course of action was available. Rather, under such circumstances, a person is required to exhibit only an honest exercise of judgment. The purpose behind the rule is clear: a person confronted with a sudden and unforeseeable occurrence, because of the shortness of time in which to react, should not be held to the same standard of care as someone confronted with a foreseeable occurrence. It is important to recognize, however, that a person cannot avail himself of the protection of this doctrine if that person was himself driving carelessly or recklessly.

*Levey v. DeNardo*, 555 Pa. 514, 725 A.2d 733, 735–736 (1999), quoting, *Lockhart*, 665 A.2d at 1180. "A party who pleads the existence of [a sudden] emergency bears the burden of proof on this allegation." *Stacy v. Thrower Trucking, Inc.*, 253 Pa.Super. 150, 384 A.2d 1274, 1277 (1978) (citation omitted). "[W]here the evidence leaves some doubt as to whether an emergency situation existed, wholly independent of and not created by the plaintiff's own acts of negligence or recklessness, it is incumbent upon the trial [court] to submit the issue to the jury for its determination." *Buchecker v. Reading Co.*, 271 Pa.Super. 35, 412 A.2d 147, 155 (1979) (citation omitted).

As previously noted, the principle factor that led the trial court to refuse an instruction on the sudden emergency doctrine was the fact that Stutts' vehicle was traveling in the same direction as Appellant's

---

**6.** Originally a common law principle, the clear distance ahead rule is now codified in the Motor Vehicle Code. The relevant provision provides that a driver may not operate his vehicle "at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead." 75 Pa.C.S.A. § 3361. From our review of the record, it does not appear that the trial court instructed the jury to assess Appellant's conduct under the clear distance ahead rule. Nevertheless, we reference the clear distance ahead rule in our discussion because the rationale employed by the trial court to reject the sudden emergency doctrine is predicated upon the test used to differentiate the application of the sudden emergency doctrine from the application of the clear distance ahead rule. Hence, a short review of the clear distance ahead rule is imperative to a complete and comprehensive understanding of the issues raised in this appeal.

van when the collision between the parties occurred. Specifically, the trial court noted, "the sudden emergency doctrine applies only to moving instrumentalities thrust into a driver's path of travel, and not to static objects, including vehicles moving in the same direction." Trial Court Opinion, 9/17/13, at 5. Thus, the trial court concluded that the record did not support the application of the sudden emergency doctrine because Stutts' vehicle, which was moving in the same direction as Appellant's van, "was not suddenly thrust into [Appellant's] oncoming path of travel." *Id.* For the reasons that follow, we hold that the trial court's determination departed from the fundamental principles underlying the sudden emergency doctrine as applied in Pennsylvania.

Prior decisions of this Court have relied upon the dichotomy between moving instrumentalities and static objects to differentiate the application of the sudden emergency doctrine from the application of the clear distance ahead rule. We have explained the principles supporting this approach as follows:

> Generally a jury should not be instructed on both the assured clear distance ahead rule and the sudden emergency doctrine since the two are mutually exclusive. This is based on the rationale that the assured clear distance ahead rule applies to essentially static or static objects including vehicles moving in the same direction, while the sudden emergency doctrine applies only to moving instrumentalities thrust into a driver's path of travel.

*Cunningham v. Byers*, 732 A.2d 655, 658 (Pa.Super.1999) (footnote omitted).

In considering application of the sudden emergency doctrine, however, our Supreme Court has expressly commented upon this Court's distinction between static and moving objects and urged caution against an inflexible use of this principle. In *Lockhart*, a motorist (Lockhart) was proceeding through a series of curves when she encountered a garbage truck parked diagonally across her lane of traffic. She applied her brakes but still suffered serious injuries after colliding with the garbage truck. Thereafter, she filed a tort action against the owner and the driver of the garbage truck. At trial, the defendants asserted that Lockhart violated the clear distance ahead rule by failing to drive at a speed that would have allowed her to stop within an assured clear distance. Lockhart responded that she should be relieved of such responsibility because she encountered a sudden emergency (the garbage truck) and she reacted in a reasonable manner. The trial court instructed the jury on the clear distance ahead rule and denied Lockhart's request for an instruction on the sudden emergency doctrine. Ultimately, the jury returned a verdict in favor of the defendants and Lockhart appealed.

We affirmed the judgment entered in favor of the defendants. *Lockhart v. List*, 426 Pa.Super. 647, 620 A.2d 1241 (1992) (unpublished memorandum), *rev'd*, 542 Pa. 141, 665 A.2d 1176 (1995). Our decision cited two reasons for sustaining the trial court's rejection of the sudden emergency doctrine. First, we determined that any emergency that arose during the collision was caused by Lockhart driving her car at too great a speed to stop before colliding with the garbage truck. Second, we held that Lockhart was not entitled to an instruction on the sudden emergency doctrine because she offered no testimony to the effect that the garbage truck was in motion when it first came into her view.

Our Supreme Court rejected these determinations and held that Lockhart was entitled to a sudden emergency instruction. The *Lockhart* Court reviewed the

record, including Lockhart's testimony that she was traveling between 40 and 45 miles per hour when she encountered the garbage truck. Our Supreme Court also reviewed the testimony of a state trooper who said there was no posted speed limit on the day of the accident and that, therefore, the speed limit had to be deemed 55 miles per hour. Based upon this evidence and since Lockhart's violation of the clear distance ahead rule could not be determined as a matter of law but had to be submitted to the jury, our Supreme Court held that it was improper to withhold an instruction on the sudden emergency doctrine.[7] *Lockhart*, 665 A.2d at 1182.

■ Next, our Supreme Court turned its attention to the legal consequences attaching to the status of the garbage truck as either a moving instrumentality or static object. In concluding that both this Court and the trial court overemphasized the "moving object" criteria for applying the sudden emergency doctrine, our Supreme Court offered the following observations:

First, the evidence is unclear as to whether the garbage truck was actually stationary at the time of the collision. Thus, on that basis alone, we find it error for the trial judge to have denied the sudden emergency charge. Moreover, even assuming that the garbage truck was stationary at the time, we think reliance upon that fact was misplaced.

Th[is] Court has repeatedly announced that the assured clear distance ahead rule generally applies to static or essen-

tially static objects while the sudden emergency doctrine applies to moving instrumentalities unexpectedly thrust into the driver's path. *See e.g., Unangst v. Whitehouse* [235 Pa.Super. 458], 344 A.2d 695 (Pa.Super.1975); *Sullivan v. Wolson* [262 Pa.Super. 397], 396 A.2d 1230 (Pa.Super.1978); *Brown v. Schriver* [254 Pa.Super. 468], 386 A.2d 45 (Pa.Super.1978). In so holding, th[is] Court has relied, at times, on [our Supreme] Court's decision in *Haines [v. Dulaney,* 424 Pa. 608, 227 A.2d 625 (Pa. 1967). Our Supreme] Court in *Haines* did not, however, expressly state any such distinction. Rather ... [our Supreme] Court therein simply found that any emergency which did arise was the result of Mrs. Haines' own negligence in driving at too great a speed for the conditions. While in its discussion of this point, [our Supreme] Court did note that there were no objects other than Mrs. Haines' vehicle in motion at the time of the accident, the decision clearly did not rest on that determination.

Nevertheless, [our Supreme] Court agrees generally with th[is] Court's distinction between fixed and moving objects since it is quite reasonable to hold a person accountable for colliding with a stationary object on the road which is, and has been, in plain view for everyone to see, while it is quite a distinct matter when an object or instrumentality suddenly moves into the path of an oncoming vehicle. [Our Supreme Court] do[es] not, however, believe it to be as inflexible a rule as that ascribed to it by

---

7. In reaching this conclusion, our Supreme Court distinguished two of its prior decisions upon which this Court relied in affirming the defense verdict in *Lockhart. See Haines v. Dulaney,* 424 Pa. 608, 227 A.2d 625 (1967); *see also Springer v. Luptowski,* 535 Pa. 332, 635 A.2d 134 (1993). In both *Haines* and *Springer,* the plaintiffs emerged from curva-

tures in their traveling lanes only to encounter stopped vehicles that obstructed their paths. The evidence in both cases showed that the plaintiffs were driving too fast to comply with the clear distance ahead rule and, therefore, it was appropriate to refuse instructions on the sudden emergency doctrine.

the lower courts [in *Lockhart*]. Since the precept underlying this distinction is that a driver who, if driving prudently, could have or would have seen the obstacle in the roadway, whether it was moving or stationary, the distinction is rendered meaningless where the evidence, at least arguably, suggests either that the driver would not have seen the obstacle in time to avoid a collision and/or would not have reasonably foreseen the occurrence of the obstacle, even if prudent. In other words, while it may be that given the particular facts presented, the doctrine of sudden emergency and that of assured clear distance ahead would be mutually exclusive, the facts in another case may not conclusively demonstrate that exclusivity, rendering a charge on both doctrines appropriate. *Lockhart,* 665 A.2d at 1182–1183.[8] The principle which emerges from *Lockhart* is that while the moving or fixed status of an object may be relevant in determining whether to apply the sudden emergency doctrine, it is error to employ this criteria as a dispositive inquiry for that purpose.

In a subsequent case, which also considered application of the sudden emergency doctrine, our Supreme Court again reaffirmed its warning against inflexible application of the distinction between static and moving objects. *See Levey,* 725 A.2d at 736. In *Levey,* Levey's vehicle was traveling around a wet curve with DeNardo's vehicle following behind her. A third vehicle, driven by Manley, was traveling on the same road in the opposite direction. Manley stopped in his lane of travel and then, suddenly and without warning, turned left into the path of Levey and DeNardo. Levey applied her brakes but was unable to avoid a collision with Manley. DeNardo, too, applied his brakes but on the wet road surface was unable to avoid colliding first with Levey and then with Manley.

Levey filed claims against both DeNardo and Manley. Levey settled her claim against Manley prior to trial but proceeded before a jury on her claim against DeNardo. In charging the jury, the trial court instructed the panel that Levey could not be held contributorily negligent because of the sudden emergency doctrine. The trial court rejected DeNardo's contention that the sudden emergency also applied to him and, instead, instructed the jury that it should assess DeNardo's liability solely by application of the clear distance ahead rule. The jury returned a substantial verdict in favor of Levey and DeNardo appealed, claiming, *inter alia,* that the trial court erred in instructing the jury on the clear distance ahead rule yet refusing a charge on the sudden emergency doctrine.

We affirmed Levey's judgment, concluding that DeNardo was not entitled to a sudden emergency instruction. *Levey v. Denardo,* 454 Pa.Super. 693, 685 A.2d 219 (1996) (unpublished memorandum), *rev'd,* 555 Pa. 514, 725 A.2d 733 (1999). In affirming the judgment, we distinguished

---

**8.** As our Supreme Court acknowledged, we have recognized limits on the utility of the moving/static dichotomy in cases where we have held that, while generally the jury should not be instructed on both the sudden emergency doctrine and the clear distance ahead rule since the two are mutually exclusive, it is proper to charge the jury as to both doctrines where the evidence does not conclusively establish that it was the negligence of the person claiming the defense of sudden emergen-

cy that created the sudden emergency. *See, e.g., Papandrea v. Hartman,* 352 Pa.Super. 163, 507 A.2d 822, 826 (1986) (citation omitted); *Potenburg v. Varner,* 284 Pa.Super. 19, 424 A.2d 1370, 1372 (1981); *Stacy,* 384 A.2d at 1277. Thus, where the evidence is such that reasonable minds could differ as to whether a sudden emergency actually existed, both charges should be given. *Lockhart,* 665 A.2d at 1183.

*Lockhart* on the basis that *Lockhart* involved only one driver whereas, in *Levey*, two drivers proceeding in the same direction sought to invoke the sudden emergency doctrine. Based upon DeNardo's testimony that he was unable to avoid colliding with Levey, we found that the evidence established that DeNardo's negligence caused the collision. We also concluded, based upon our prior decisions in *Elder v. Orluck*, 334 Pa.Super. 329, 483 A.2d 474 (1984), *aff'd*, 511 Pa. 402, 515 A.2d 517 (1986) and *Cannon v. Tabor*, 434 Pa.Super. 232, 642 A.2d 1108 (1994), that where two vehicles were traveling in the same direction, one behind the other, the second driver could not invoke the sudden emergency doctrine.

Upon further review, our Supreme Court rejected these assessments and reversed our order. Our Supreme Court reasoned that neither *Elder* nor *Cannon* compelled the conclusion that where an accident involves motorists traveling in the same direction, only the first driver can invoke the sudden emergency doctrine.[9] More significantly, however, our Supreme Court again "cautioned against [ ] rigid adherence to the distinction between static and moving objects in determining the applicability of the assured clear distance ahead rule and the sudden emergency doctrine." *Levey*, 725 A.2d at 736. After reviewing the record, our Supreme Court concluded that there was insufficient evidence to establish conclusively that DeNardo was driving in an unsafe manner in

violation of the clear distance ahead rule. Therefore, since the facts did not unequivocally establish that DeNardo's negligence led to the collision with Levey, "it was error for the trial court **not** to instruct the jury that DeNardo, too, could be judged on the basis of the defense of the sudden emergency doctrine." *Levey*, 725 A.2d at 737 (emphasis added).

This Court's most in-depth treatment of the sudden emergency doctrine came in *McKee by McKee v. Evans*, 380 Pa.Super. 120, 551 A.2d 260 (1988) (*en banc*), *appeal denied*, 522 Pa. 600, 562 A.2d 824 & 522 Pa. 604, 562 A.2d 827 (1989). In *McKee*, the driver's girlfriend was a passenger in his vehicle parked outside of her residence. The girlfriend's former boyfriend approached in his vehicle and a ten mile, 10–15 minute chase ensued. At the conclusion of the chase, an accident between the driver, his girlfriend's former boyfriend, and an innocent third-party occurred. The occupants of the innocent third-party's vehicle sued the driver and the driver successfully sought to have the sudden emergency doctrine instruction included in the jury charge.

■ We distilled a four-part test for the applicability of the sudden emergency doctrine. A jury instruction on the sudden emergency doctrine is available to an individual "[ (1) ] who suddenly and unexpectedly finds himself confronted with a perilous situation[, (2) ] that permits no opportunity to assess the danger[, (3) ] if

---

9. In *Elder*, there was no evidence that either driver was confronted with a sudden emergency. In fact, the defense in that case was that Elder's taillights were inoperable, not that the defendant encountered an object which suddenly darted in front of his vehicle. *Cannon* described a hypothetical which posited a situation in which the first driver claimed that a deer ran in front of her, causing her to abruptly stop and leading to a collision with a second driver who was fol-

lowing her. The second driver claimed, however, that there was no deer. The second driver in the hypothetical disputed the presence of any sudden emergency and, thus, never requested an instruction on that doctrine. Given these circumstances, our Supreme Court held that neither *Elder* nor *Cannon* foreclosed DeNardo's request for a sudden emergency instruction. *Levey*, 725 A.2d at 736.

he] respond[s] appropriately[, and (4)] .... proves that he did not create the emergency." [10] *McKee*, 551 A.2d at 272–273 (citations omitted). Based upon these factors, we concluded that the sudden emergency doctrine was inapplicable because the driver's decision to engage in, and continue, the chase: (1) created the crisis situation; (2) constituted a calculated decision made over a 10 to 15 minute time-period that would not have deprived a reasonable person of the opportunity for thoughtful reflection; and, (3) resulted in the abandonment of clearly preferable choices. *Id.* at 275, 279. Thus, the driver failed to satisfy the test for application of the sudden emergency doctrine.

■ In contrast to the result in *McKee*, Appellant here is entitled to an instruction on the sudden emergency doctrine under the four-part standard articulated in that case. Fairly viewed, Appellant and Fulton testified similarly that Stutts' vehicle collided with Appellant's van when Stutts veered into Appellant's lane of travel. Thereafter, Appellant swerved to the left into oncoming traffic and then back to his right, ultimately crossing over the southbound lanes of State Route 255 and colliding with the guardrail. Stutts' description of the accident differed slightly. Stutts testified that he was traveling in the left southbound lane of State Route 255 when Appellant's van suddenly appeared to his left, cut him off, and made contact with the left front fender and bumper of his car.

If credited by the factfinder, the testimony offered by Appellant and Fulton could establish that the initial leftward movement of Stutts' vehicle unexpectedly presented Appellant with a perilous situation that permitted Appellant little or no time to rationally contemplate a response. In addition, the testimony does not suggest that Appellant's operation of his vehicle caused or contributed to the emergency. Finally, Appellant's movement into the lanes of oncoming traffic and ultimate collision with the guardrail after crossing back over the southbound lanes of State Route 255 could rationally be explained as an unconscious reflex undertaken to avoid further contact with Stutts' car. Under *McKee*, this is all that is needed to invoke the sudden emergency doctrine. *See Unangst*, 344 A.2d at 699 (emphasis added) ("A sudden and clear emergency may be a dust cloud, a moving object, a sudden blocking of the road, **the sudden swerving of other vehicles** or [ ] blinding lights."). Moreover, we conclude that the conflicting testimony given by Stutts does not alter this conclusion.[11] *See Levey*, 725 A.2d at 737 (trial court errs in refusing charge on sudden emergency where evidence does not unequivocally establish that negligence of party invoking doctrine caused collision); *see also Lockhart*, 665 A.2d at 1183 (sudden emergency charge should be given where reasonable minds could differ as to whether sudden emergency existed).

We are not persuaded that the authorities cited by the trial court compel a different conclusion. The trial court cites *Elder* and *Papandrea v. Hartman*, 352 Pa.Super.

---

10. Conspicuously absent from the fundamental criteria we enumerated in *McKee* is any inquiry into whether the vehicles involved in an accident were traveling in the same direction. Logically speaking, this consideration relates to whether the proponent of the sudden emergency doctrine has demonstrated that his actions did not create the emergency or whether he, in fact, has been confronted with a perilous situation.

11. For this reason, we reject Stutts' claim that Appellant was not entitled to the requested charge because the testimony of all three eyewitnesses to the accident did not support application of the sudden emergency doctrine.

163, 507 A.2d 822 (1986), to support its conclusion that Appellant could not invoke the sudden emergency doctrine because his van and Stutts' car were traveling in the same direction. *See* Trial Court Opinion, 9/17/13, at 5. These decisions are easily distinguished from the present case and offer no convincing guidance in the circumstances presently before us.

In *Elder,* Elder slowed his vehicle while traveling up a hill because the vehicle in front of him had decreased its speed. Orluck was traveling in the same direction and lane as Elder, but behind him. As Elder decelerated, Orluck failed to slow down and struck the rear of Elder's vehicle. We concluded that the trial court incorrectly charged the jury on both the sudden emergency doctrine and the clear distance ahead rule. *Elder,* 483 A.2d at 482. Although we stated in *Elder* that "the assured clear distance rule applies to essentially static or static objects, including vehicles moving in the same direction," *id.,* that was not the basis for our conclusion that the trial court erred by charging the jury on the sudden emergency doctrine. Instead, we held that the sudden emergency doctrine was inapplicable because Orluck's defense was only that Elder's taillights were inoperable—not that there had been a sudden emergency which caused Orluck to rear-end Elder. *Id.* Thus, *Elder* does not stand for the proposition that the sudden emergency doctrine may never be applied when an accident involves two vehicles traveling in the same direction.

In *Papandrea,* the driver was approaching an intersection when he claimed that his brakes failed. The trial court charged the jury on both the sudden emergency doctrine and the clear distance ahead rule. In discussing the issues raised in that appeal, we noted that, "the assured clear distance rule applies to essentially static or static objects, including vehicles moving in the same direction, while the sudden emergency doctrine applies only to moving instrumentalities thrust into a driver's path of travel." *Papandrea,* 507 A.2d at 826. However, we also observed that, in some instances, charging on both doctrines was appropriate. *Id.* Our dispositive consideration in *Papandrea* was that the trial court erred in charging on the sudden emergency doctrine in the absence of evidence in addition to the driver's own testimony that his brakes failed immediately prior to the collision. *Id.* at 826–828 (discussing special rule that when brake failure is alleged to be the cause of a collision, there must be some evidence to support the accusation other than the driver's own testimony). If the driver of the vehicle in *Papandrea* had adduced some evidence, other than his own testimony, that brake failure caused him to collide with the vehicle in front of him, he would have been entitled to a jury instruction on the sudden emergency doctrine. *Id.* at 826. Essentially, *Papandrea* held only that the uncorroborated testimony of a party may be insufficient to establish the existence of a sudden emergency based upon alleged brake failure. Our holding in that case does not preclude our determination here that Appellant is entitled to a sudden emergency instruction.

The moving/static dichotomy appears in ubiquitous fashion throughout Pennsylvania's appellate jurisprudence discussing application of the sudden emergency doctrine in motor vehicle accident cases. *E.g., Commonwealth v. Matroni,* 923 A.2d 444 (Pa.Super.2007), *appeal denied,* 597 Pa. 729, 952 A.2d 675 (2008); *Carpinet v. Mitchell,* 853 A.2d 366 (Pa.Super.2004), *appeal denied,* 586 Pa. 706, 889 A.2d 1212 (2005), *superseded on other grounds by* Pa.R.C.P. 223.3 *as recognized by Gillingham v. Consol Energy, Inc.,* 51 A.3d 841, 866 (Pa.Super.2012); *Cunningham,* 732 A.2d at 658; *Brown v. Schriver,* 254 Pa.Su-

per. 468, 386 A.2d 45 (Pa.Super.1978); *Reifel v. Hershey Estates,* 222 Pa.Super. 212, 295 A.2d 138, 140 (1972). Careful study of these decisions reveals, however, that the denial of an instruction on the sudden emergency doctrine may not rely solely upon the fact that the vehicles were traveling in the same direction. *Matroni,* 923 A.2d at 452 (criminal defendant never entitled to a jury instruction on the sudden emergency doctrine no matter the circumstances and, in any event, defendant was driving recklessly); *Carpinet,* 853 A.2d at 374 (defendant was driving recklessly); *Cunningham,* 732 A.2d at 658 (failure to see brake lights is not a sudden emergency); *Brown,* 386 A.2d at 49 (gravel in the road was not a sudden emergency); *Reifel,* 295 A.2d at 140 (driver had opportunity to assess the danger).

Instead, each case involved independent factors bearing upon the applicability of the sudden emergency doctrine. Moreover, in each case, the dispositive factual considerations fell in line with the overarching principles of the sudden emergency doctrine that we outlined in *McKee.* Thus, we conclude that a vehicle's status as either a moving or a static object is properly understood as but one analytical factor in deciding whether the sudden emergency doctrine applies. Consistent with the prior holdings of our Supreme Court, and the prior decisions of this Court, such language clearly carries less than dispositive weight.

In this case, the trial court refused to instruct the jury on the sudden emergency doctrine because it determined that the vehicles operated by Appellant and Stutts were traveling in the same direction. Under *Levey* and *Lockhart,* this ruling impermissibly overstated the weight that this factor may be accorded in assessing the applicability of the sudden emergency doctrine. Hence, Appellant was entitled to the requested instruction.[12]

■ Having determined that Appellant was entitled to a jury instruction on the sudden emergency doctrine, we must determine whether that error was harmless. "[A]n error is harmless if a party does not suffer prejudice as a result of the error." *Lake Adventure Cmty. Ass'n v. Dingman Tp. Zoning Hearing Bd.,* 72 A.3d 807, 809 (Pa.Cmwlth.2013) (citation omitted).

In *Kukowski v. Kukowski,* 385 Pa.Super. 172, 560 A.2d 222 (1989), the driver was exiting a car repair shop when he lost control of his vehicle and rammed an exit gate after hitting several potholes. The driver and passenger sued the car repair shop for not providing a safe means of entering and leaving the establishment. The passenger also sued the driver for negligence. The jury returned a verdict in favor of the driver and passenger against the car repair shop and apportioned 60% of the negligence to the car repair shop and 40% to the driver. The car repair shop appealed, alleging that the trial court

12. We note that although this case is the first time an appellate court in this Commonwealth has considered this fact pattern, courts in other states have come to similar conclusions regarding the applicability of the sudden emergency doctrine in similar factual circumstances. *See Kirkpatrick v. Gilbert,* 695 N.W.2d 333 (table) (Iowa App.2004) (concluding that a vehicle changing lanes directly in front of a motorist was sufficient to entitle that motorist to a sudden emergency jury instruction); *Moses v. Gilliam,* 530 So.2d 1213, 1214 (La.App.1988) (car suddenly and unexpectedly changing lanes was a sudden emergency); *see also Metro. Atlanta Rapid Transit Auth. v. Mehretab,* 224 Ga.App. 263, 480 S.E.2d 310, 312 (1997) (implying that if a truck suddenly pulled in front of a bus causing the bus to change lanes the sudden emergency doctrine would apply); *Holmes v. Surfus,* 194 So.2d 283, 283 (Fla.App.1967) (driver not required to anticipate that another vehicle will suddenly change lanes).

erred by charging the jury on the sudden emergency doctrine.

We concluded that the sudden emergency doctrine was inapplicable. *Kukowski*, 560 A.2d at 225. We noted that road conditions, such as gravel or ice, are not sudden emergencies and thus potholes are likewise not sudden emergencies. *Id.* However, we determined that such error was harmless because the jury apportioned 40% of the fault to the driver. *Id.* at 226. We stated that this was evidence that the jury rejected the sudden emergency doctrine and instead applied the clear distance ahead rule. *Id.*

██ In the case at bar, we are presented with the opposite scenario, to-wit, the failure of the trial court to charge on the sudden emergency doctrine. If the jury had been charged on the sudden emergency doctrine, then it may have determined that the doctrine applied and that Appellant, under a more forgiving standard of care, was not negligent or negligent to a lesser degree. Therefore, we conclude that Appellant was prejudiced by the trial court's decision not to instruct the jury on the sudden emergency doctrine. Accordingly, the trial court's error was not harmless and Appellant is entitled to a new trial as a result of the denial of the jury instruction on the sudden emergency doctrine.

██ Although we have determined that Appellant is entitled to a new trial for failure to charge the jury on the sudden emergency doctrine, in the interest of judicial economy, we address Appellant's second issue that the trial court erred in declining to charge the jury on negligence *per se*. It is well-settled that a violation of a provision of the Motor Vehicle Code constitutes negligence *per se*. *Schemberg v. Smicherko*, 85 A.3d 1071, 1075 (Pa.Super.2014), *citing Garcia v. Bang*, 375 Pa.Super. 356, 544 A.2d 509, 511 (1988); *Bumbarger v. Kaminsky*, 311 Pa.Super.

177, 457 A.2d 552, 554 (1983). In this case, there was evidence presented at trial that could have supported a finding that Stutts violated the Motor Vehicle Code.

Section 3309 of the Motor Vehicle Code provides that when a road is divided into two or more lanes, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." 75 Pa.C.S.A. § 3309(1). Appellant testified that Stutts changed lanes while adjacent to Appellant's vehicle. If the jury were to credit this testimony, Stutts' action would have violated section 3309(1) and, therefore, been *per se* negligence. Accordingly, the trial court erred in not charging the jury on *per se* negligence as it relates to section 3309(1) of the Motor Vehicle Code.

██ However, a charge on negligence *per se* with respect to Stutts' alleged violation of section 3714 of the Motor Vehicle Code was not warranted. Section 3714 provides that "[a]ny person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving[.]" 75 Pa.C.S.A. § 3714(a). This statute merely recites general negligence principles and a charge related thereto would serve no purpose other than to confuse the jury.

As we have determined that Appellant is entitled to a new trial, we decline to address Appellant's contention that the verdict was against the weight of the evidence. *See Banohashim v. R.S. Enters., LLC*, 77 A.3d 14, 27 n. 6 (Pa.Super.2013), *quoting Commonwealth v. Oakes*, 481 Pa. 343, 392 A.2d 1324, 1326 (1978) ("The grant of a new trial wipes the slate clean of the former trial.").

Judgment vacated. Case remanded. Jurisdiction relinquished.