J-S28044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF A.Z.F. | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.O.F.-F., NATURAL FATHER | : : | No. 67 WDA 2017 |

Appeal from the Decree December 9, 2016
In the Court of Common Pleas of Erie County
Orphans' Court at No(s):  22 In Adoption 2016

BEFORE:   OLSON, MOULTON, and STRASSBURGER[*], JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED JUNE 16, 2017**

R.O.F.-F. (Father) appeals from the Decree entered December 9, 2016, in the Court of Common Pleas of Erie County, which terminated involuntarily his parental rights to his minor daughter, A.Z.F. (Child).[1]  We affirm.

The orphans' court summarized the relevant factual and procedural history of this matter as follows.

> [Child] was born [in January 2014].  She was adjudicated dependent on September 8, 2014 after she was removed from her parents' care due to an incident of domestic violence. During this incident, [Father] held the natural mother down, poured bleach over her face, and held a gun to her head while [Child] was present in the home.  The natural mother showed

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court entered a separate decree that same day terminating the parental rights of Child's mother, D.W.  D.W. did not appeal the termination of her parental rights, nor did she file a brief in connection with this appeal.

[Erie County Office of Children and Youth (OCY)] workers staining on the couch and carpet that appeared consistent with exposure to bleach. [Father] was arrested and criminally charged after this incident.

The natural mother received medical treatment for skin and eye irritation. At the time of the adjudication, [Father] stipulated to the facts underlying the adjudication, including his own history with [OCY] regarding another child.

Orphans' Court Opinion, 2/2/2017, at 1 (citations omitted).

On April 4, 2016, OCY filed a petition to terminate involuntarily Father's parental rights to Child. The orphans' court conducted a termination hearing on December 1, 2016, and December 2, 2016. Following the hearing, on December 9, 2016, the court entered a decree terminating Father's parental rights. Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Father raises the following issues for our review.

1. Did the orphans' court commit an abuse of discretion and/or error of law when it concluded that the termination of [Father's] parental rights was in [C]hild's best interest in view of the unconverted [*sic*] evidence of record that [C]hild and [F]ather share a close, loving relationship and bond?

2. Did the orphans' court err when it summarily denied [Father's] pre-hearing motion to compel the production of visitation case notes/case summaries as those notes and summaries likely contained information favorable to [] Father, were relevant to the termination proceeding, and were discoverable?

Father's Brief at 5 (unnecessary capitalization, orphans' court answers, and suggested answers omitted).

In his first issue, Father challenges the decree terminating his parental rights to Child. We consider Father's issue mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). On appeal, Father does not challenge the findings of the orphans' court with respect to Section 2511(a). Instead, Father focuses his argument entirely on Section 2511(b), which states as follows.

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Father argues that terminating his parental rights would be contrary to Child's needs and welfare, because he performed well during his visits with Child, and because Child is bonded with him. Father's Brief at 32-35. Father further argues that Child became upset when she was no longer able to visit with him. *Id.* at 33.

We have discussed our analysis pursuant to Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding

analysis and the term bond is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

In its opinion, the orphans' court found that Father has a "clear bond" with Child, and that because of this bond Father was given "opportunity after opportunity" to achieve reunification. Orphans' Court Opinion, 2/2/2017, at 10. However, the court found that Father failed to address his substance abuse issues, and relapsed repeatedly. *Id.* The court further found that Child has been in placement for over two years, and that she is in need of permanence and stability. *Id.* at 11. The court emphasized that Child is in a pre-adoptive foster home, that Child refers to her foster mother as "mommy," and that Child does not ask about Father. *Id.* The court concluded that neither removing Child from her current foster home nor

allowing Father to retain his parental rights would serve Child's best interest. *Id.*

Our review of the record supports the findings of the orphans' court. During the termination hearing, OCY presented the testimony of caseworker, Mary Biley. Ms. Biley testified that Father initially made progress toward reunification with Child. Father completed an anger management program, completed a domestic violence program, participated in drug screens, and attended visits with Child. N.T., 12/1/2016, at 48. Father also attended Child's medical appointments, demonstrated an understanding of Child's medical needs, and participated in the Time Limited Family Reunification program. *Id.* at 51, 57-58. Father came so close to reunification that OCY offered him overnight visits with Child three times per week. *Id.* at 59, 67.

However, Ms. Biley testified that Father failed to remedy his substance abuse issues. Ms. Biley explained that Father had four positive urine screens for alcohol in May 2015. *Id.* at 49. Father also had several positive tests for marijuana in June 2015. *Id.* at 50. In July 2015, Father had a positive drug test for alcohol and cocaine. *Id.* In December 2015, Father was "detained by probation for testing positive for alcohol."[2,3] *Id.* at 52-53, 64. The court

---

[2] Ms. Biley explained that Father was on probation as a result of "the bleach incident" described above. N.T., 12/1/2016, at 57.

[3] OCY also presented the testimony of Father's probation officer, Brad Romancik. Officer Romancik testified that Father was incarcerated a second time after he admitted to consuming alcohol on November 14, 2016. N.T.,
*(Footnote Continued Next Page)*

changed Child's permanency goal to adoption in January 2016, and Father's visits with Child ended. *Id.* at 53-54.

Concerning the relationship between Father and Child, Ms. Biley testified that their visits went "very well." *Id.* at 51. Child referred to Father as "daddy," and they appeared to share "a close connection." *Id.* at 62, 73. At the conclusion of Father's final visit with Child, in December 2015, Child became upset and cried. *Id.* at 65. On one occasion after visits ended, Child became upset due to not being able to see Father. *Id.* at 54. However, other than that one incident, Child appears to be fine. *Id.* at 54, 69. Ultimately, Ms. Biley opined that it would be in Child's best interest for Father's parental rights to be terminated. *Id.* at 55. She explained, "[Child] is integrated into the foster home, she's been with her [foster mother] for a long time, she really didn't have any adverse effects not seeing [Father] anymore." *Id.* Ms. Biley did not believe that there would be any harm to Child if Father's parental rights were terminated.[4] *Id.* at 56.

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

12/1/2016, at 12-13. Father admitted to consuming alcohol only a month after completing outpatient drug and alcohol treatment at Stairways on October 5, 2016. *Id.* at 14. Officer Romancik reported that Father had a probation revocation hearing scheduled for December 15, 2016. *Id.* at 13.

[4] OCY permanency caseworker, Kim Covatto, testified that Child is bonded with her pre-adoptive foster mother, and refers to her as "mommy." N.T., 12/1/2016, at 77-80. Ms. Covatto reported that she has not noticed "any adverse effect" on Child as a result of not visiting with Father. *Id.*

Thus, the record confirms that terminating Father's parental rights will best serve Child's needs and welfare. By the time of the termination hearing in December 2016, Child had been removed from Father's care for over two years, and was nearly three years old. During Child's time in foster care, Father had numerous opportunities to remedy his substance abuse issues, and yet failed to do so. Child cannot wait forever. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

While it is true that Child appeared to share a bond with Father during their visits, it was within the discretion of the orphans' court to accept Ms. Biley's testimony that other than appearing upset on one occasion, Child has not been negatively affected by Father's absence from her life since visits ended, and therefore that Child will not be harmed by the termination of Father's parental rights. Moreover, as explained above, the bond between a parent and his or her child is only one of many factors that courts must consider pursuant to Section 2511(b). It was within the court's discretion to conclude that Child's need for permanence and stability outweighs whatever bond that Child may continue to have with Father. *See C.D.R.*, 111 A.3d at 1219.

We next consider Father's second issue, in which he argues that the orphans' court erred by denying his pre-hearing motion to compel the production of visitation case notes and summaries, based on its mistaken belief that the documents were protected as the work product of OCY.

Our standard of review is well-settled.

> Whether the attorney-client privilege or the work product doctrine protects a communication from disclosure is a question of law. This Court's standard of review over questions of law is *de novo*, and the scope of review is plenary. Our review of a discovery order, ... requires the application of an abuse of discretion standard.

*Saint Luke's Hosp. of Bethlehem v. Vivian*, 99 A.3d 534, 540 (Pa. Super. 2014) (citations and quotation marks omitted).

Father's argument stems from his motion to compel filed November 7, 2016, in which he requested that the orphans' court enter an order requiring OCY to produce any "notes, reports and/or summaries" prepared by Ms. Biley, and by OCY social service aide, Abby Conley, relating to "their observations during visitation periods." Motion to Compel Production of Visitation Case Notes/Case Summaries, 11/7/2016, at ¶ 7-8. The court entered an order on November 9, 2016, denying Father's motion. In its opinion, the orphans' court explained that it denied Father's motion to compel "out of an abundance of caution, ... in an effort to protect [OCY's] work product." Trial Court Opinion, 2/2/2017, at 12. The court further explained that, even if the documents sought by Father were discoverable, any error would be harmless. *Id.*

Father argues that the orphans' court erred pursuant to our Orphans' Court Rules and Rules of Civil Procedure. Specifically, Father observes that discovery in Orphans' Court matters is governed by Orphans' Court Rule 7.1, which provides as follows.

**Rule 7.1. Depositions, Discovery, Production of Documents and Perpetuation of Testimony**

The court, by local rule or order in a particular matter, may prescribe the practice relating to depositions, discovery, production of documents and perpetuation of testimony. To the extent not provided for by local rule or an order governing a particular matter, the practice relating to depositions, discovery, production of documents and perpetuation of testimony shall conform to the practice in the Trial or Civil Division of the local Court of Common Pleas.

Pa.O.C.R. 7.1.

Father contends that there was no Erie County local orphans' court rule governing discovery at the time he filed his motion to compel. Father's Brief at 38. Father further alleges that the Erie County local rules of civil procedure contain rules governing discovery in the form of depositions only. *Id.* at 39. Therefore, Father argues, his motion to compel was governed by the Pennsylvania Rules of Civil Procedure. *Id.* Father directs our attention to Rules 4003.1 and 4003.3, which provide as follows.

**Rule 4003.1. Scope of Discovery Generally. Opinions and Contentions**

(a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature,

- 10 -

content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

(b) It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

(c) Except as otherwise provided by these rules, it is not ground for objection that the information sought involves an opinion or contention that relates to a fact or the application of law to fact.

Pa.R.C.P. 4003.1.

**Rule 4003.3. Scope of Discovery. Trial Preparation Material Generally**

Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3.

Father contends that any visitation notes and summaries would be relevant to the involuntary termination of his parental rights pursuant to Pa.R.C.P. 4003.1(a), and would not be privileged pursuant Pa.R.C.P. 4003.3. Father's Brief at 41-42. Father further alleges that the failure of the court to compel the production of any notes and summaries was not harmless error. *Id.* at 42-43. Father argues, "[i]t is possible that the review of these

records could have opened additional areas for cross-examination that remain unknown to [Father] and that could have been relevant to the issue of termination." *Id.* at 43. Specifically, Father contends that the visitation notes or summaries may have provided "invaluable insight into [] Father's parenting ability and the parent/child bond." *Id.* at 41.

Father is not entitled to relief. Even assuming that Father is correct in his assessment of our Orphans' Court Rules and Rules of Civil Procedure, it is clear that the production of any visitation notes or summaries prepared by Ms. Biley and Ms. Conley would not have changed the outcome of this case. Both Ms. Biley and Ms. Conley testified that Father's visits with Child went very well, and the orphans' court found that Father and Child are bonded. Father's ability to parent during supervised visitation and his bond with Child are not in dispute, and notes and summaries recording Father's interactions with Child during their visits do not relate Father's failure to rectify his substance abuse and the lack of a significant adverse impact on Child once Father stopped visiting. Because any visitation notes or summaries would have been merely cumulative of the other evidence presented to the court, we conclude that Father suffered no prejudice as a result of the order denying his motion to compel, and that any error on the part of the court was harmless. *See Drew v. Work*, 95 A.3d 324, 337 (Pa. Super. 2014) (quoting *Lake Adventure Cmty. Ass'n v. Dingman Tp. Zoning Hearing Bd.*, 72 A.3d 807, 809 (Pa. Cmwlth. 2013)) ("'[A]n error is harmless if a party does not suffer prejudice as a result of the error.'").

- 12 -

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights to Child involuntarily, and that any error on the part of the court in denying Father's motion to compel was harmless. Therefore, we affirm the court's December 9, 2016 decree.

Decree affirmed.

Judge Moulton joins.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2017