J-A04019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALISA CREIGHTON AND JIPPEY CREIGHTON, H/W, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| KIDDIE ACADEMY OF PLUMSTEADVILLE; BJ KIDS, INC.; JANICE E. VISCONTO; THE ESTATE OF WILLIAM VISCONTO; KIDDIE ACADEMY; KIDDIE ACADEMY CHILD LEARNING CENTER; KIDDIE ACADEMY DOMESTIC FRANCHISING, LLC; TOM KEENAN BUILDERS; TOM KEENAN; PINNACLE PAVEMENT, LLC; HANOVER COMMONS ASSOCIATES, L.P.; D&B CARES FOR KIDS, INC.; SHAN-GRI-LA SOD FARM; KEENAN BUILDERS; AND ESTATE OF DON KEENAN, | : | |
| | : | |
| Appellees | : | |
| v. | : | |
| | : | |
| SGL CONTRACTORS, INC., | : | |
| | : | |
| Appellee | : | No. 3130 EDA 2018 |

Appeal from the Judgment Entered September 12, 2018
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): November Term, 2015 No. 00383

BEFORE:   PANELLA, P.J., STRASSBURGER, J.* AND COLINS, J.*

MEMORANDUM BY STRASSBURGER, J.:                 **FILED JULY 17, 2020**

Alisa Creighton (Creighton) and her husband Jippey Creighton (collectively, the Creightons) appeal from a judgment entered against them and in favor of Hanover Commons Associates, L.P. (Hanover) and SGL

*Retired Senior Judge assigned to the Superior Court.

Contractors, Inc. (SGL). We affirm the entry of nonsuit to Kiddie Academy of Plumsteadville (Kiddie Academy), vacate the entry of nonsuit against Shan-Gri-La Sod Farm, vacate the judgment in favor of Hanover and SGL, and remand for further proceedings in accordance with this memorandum.

This case stems from a slip-and-fall incident in a parking lot on a commercial property owned by Hanover. Hanover leased portions of the property to three different tenants. Hanover maintained the common areas of the property, including the parking lot. The incident occurred in the parking lot outside of the portion of the property leased to Kiddie Academy, which operated a daycare. The trial court recounted the facts as follows.

> On January 13, 2014, around 7:45 a.m., Creighton was taking her children to daycare at Kiddie Academy []. She had been taking her children there for almost three years. She testified that she parked her minivan near the Kiddie Academy entrance, exited the driver's seat, and began walking towards the rear of the van. As she did so, her "foot just flew out from under" her and she fell. She stated that the parking lot surface was "just really slippery," though she did not immediately know what she had slipped on. It was not snowing or raining, and she had not seen any potential hazards on the roadway. She stated that the parking lot had [] a "white coating" on it at the time of her fall, although she did not know if this was frost or snow or something else.
>
> Creighton averred that, as she fell she felt "shooting pains" down her right arm. While she was on the ground, she saw a divot or depression in the asphalt where it appeared that water had pooled and then froze[], and she believed she had slipped on that puddle of ice. She got up and took her children inside. She immediately reported her fall to one of the teachers [at Kiddie Academy], and then to the director of the daycare, Alison Mawson. As she returned to her van to leave, she took Mawson with her and pointed out the icy patch where she had fallen. Creighton then returned home and called her doctor, who

- 2 -

referred her to a specialist.  She began experiencing pains that same day in her arm and collarbone.

Creighton averred that, despite many types of treatments she has received, she still has excruciating ongoing pains in her arms, shoulders, and collar[bone] areas from this incident that significantly affect her day-to-day life, as well as concentration and memory/recall issues.  She stated that her doctor informed her that she will need future surgical treatments, although she had not yet undergone any surgeries at the time of this litigation.

Trial Court Opinion, 6/1/2019, at 2-3 (party designation altered; record citations and title omitted).

The Creightons filed a complaint raising claims of negligence and loss of consortium against Defendants[1] on November 3, 2015, which was amended on January 13, 2016.  After Defendants filed a series of preliminary objections, all of which were overruled or mooted by the filing of the amended complaint, Defendants each filed an answer with new matter

---

[1] The term Defendants collectively refers to the individuals and entities referenced in the caption, all of which were purportedly connected to the daycare (*i.e.*, Kiddie Academy), owner/property manager of the commercial property (*i.e.*, Hanover), and the snow-and-ice removal company used by the owner/property manager (*i.e.*, either Shan-Gri-La Sod Farm or SGL; as explained *infra*, the issue of which of these two entities performed snow-and-ice removal is in dispute).  Several of the Defendants were dismissed from the case or had summary judgment entered in their favor prior to trial, including Pinnacle Pavement, LLC (dismissed with prejudice via stipulation), the Estate of Don Keenan, Sr. (dismissed with prejudice via unopposed motion for summary judgment), and Tom Keenan and Tom Keenan Builders (summary judgment entered in their favor and against all other parties with prejudice).

and a cross-claim against other co-defendants in 2016.[2] On June 6, 2016, Hanover filed a joinder complaint against SGL, which filed an answer with new matter and a cross-claim to the Creightons' amended complaint and Hanover's joinder complaint on August 30, 2016.[3] Following discovery and the filing of various motions, including motions for summary judgment, and motions *in limine*, the case proceeded to a jury trial. During the trial, which was held on May 1-7, 2018, the remaining Defendants moved for a nonsuit. The trial court granted the motions for nonsuit for nine of the Defendants,[4] and denied the motions for nonsuit filed by Hanover and SGL. At the conclusion of trial, the jury rendered a verdict finding that Hanover and SGL were not negligent. It also determined that Creighton was not negligent. The Creightons timely filed a post-trial motion, which was denied by the trial court. Judgment was entered on September 17, 2018.

The Creightons timely filed a notice of appeal. The trial court ordered the Creightons to file a concise statement of matters complained of on

---

[2] Ultimately, however, Defendants agreed not to present evidence against each other at trial and largely presented a united front.

[3] As the statute of limitations had expired by the time SGL was joined as an additional defendant, the Creightons did not assert a direct complaint against SGL; thus, SGL's liability is derivative of Hanover's.

[4] These defendants were D & B Cares for Kids, Kiddie Academy Domestic Franchising, LLC, Kiddie Academy Child Learning Center, Estate of William Visconto, Janice E. Visconto, Kiddie Academy, BJ Kids, Inc., Keenan Builders, and Shan-Gri-La Sod Farm.

appeal pursuant to Pa.R.A.P. 1925(b). The Crieghtons complied, but their concise statement listed 16 issues and 28 sub-issues. The trial court submitted a Rule 1925(a) opinion, which addressed the merits on certain issues it deemed to be discernable, but also suggested that the verbosity and redundancy of the statement "was an attempt to overwhelm the trial court and circumvent the meaning and purpose of Rule 1925(b)."[5] Trial Court Opinion, 6/1/2019, at 6 (citation and quotation marks omitted). The trial court was able to discern and address all of the issues raised in the Creightons' brief.

Timely filing of a response to a trial court's Rule 1925(b) order is not enough to preserve issues for appeal. *Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 210 (Pa. Super. 2008). Rule 1925 requires an appellant to "set forth only those rulings or errors that the appellant intends to challenge," Pa.R.A.P. 1925(b)(4)(i), and the statement "should not be redundant[.]" Pa.R.A.P. 1925(b)(4)(iv). "Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors will not alone be grounds for finding waiver." *Id.* However, if an appellant fails to set forth a sufficiently "concise" and "coherent" statement in circumstances that suggest bad faith, waiver of all issues may result. *Jiricko*, 947 A.2d at 210; *see also Mahonski v. Engel*, 145 A.3d 175, 182 (Pa. Super. 2016)

_____

[5] The trial court also declined to respond to various issues it deemed to be waived for vagueness.

(deeming all claims waived when appellants filed a voluminous Rule 1925(b) statement with 87 issues under circumstances suggesting bad faith in a straightforward contract action); ***Maya v. Johnson & Johnson***, 97 A.3d 1203, 1211 n.4 (Pa. Super. 2014) (suggesting that courts should consider the complexity of the lawsuit, the size of the record, and evidence of bad faith or an attempt to thwart the appellate process when deciding waiver issues pursuant to Pa.R.A.P. 1925(b)).

We agree with the trial court that the Creightons' concise statement is redundant and not actually concise, but it is not clear that the Creightons' counsel used it to subvert intentionally the intent of Rule 1925. We remind the Creightons' counsel that the point of Rule 1925 is to winnow down the issues for appeal, but decline to dismiss the Creightons' appeal based upon the concise statement. ***See Morris v. DiPaolo***, 930 A.2d 500, 503 (Pa. Super. 2007) (declining to exercise this Court's discretion to dismiss all appellate issues based upon concise statement that purportedly raised 29 issues; statement actually raised far fewer issues, and this Court characterized the redundant nature as a reflection of drafting that was "clearly inartful" but "not intentionally subver[sive]" of "the intent of the Rules of Appellate Procedure").

In contrast to their concise statement, the Creightons raise four issues on appeal.

> 1. Viewing all of the evidence actually admitted and before the
> jury for its consideration at trial in the light most favorable to the

Creightons, did the trial court err or otherwise abuse its discretion in granting a non[]suit in favor of Shan-Gri-La Sod Farms where there was unrebutted evidence that Shan-Gri-La Sod Farms had an oral contract to maintain the subject parking lot and hazardous conditions existed in the subject parking lot?

2. Where the trial court precluded evidence Kiddie Academy had control of the subject parking lot, did the trial court err or otherwise abuse its discretion in dismissing Kiddie Academy of Plumsteadville from the case?

3. Did the trial court commit legal error when it charged the jury concerning the "hills[-]and[-]ridges" doctrine telling the jury that the Creightons had the burden of proving the three essential elements [of the doctrine] when the Creightons did not have the burden of proving the "hills[-]and[-] ridges" doctrine; did not offer any evidence concerning the doctrine; no party requested the "hills[-]and[-]ridges" doctrine jury charge; the trial court admitted that it erred in so charging; and there was a substantial possibility of an incorrect result as the jury found that the Creightons did not sustain their burden of proof on the issue of negligence?

4. Did the trial court abuse[] its discretion by entering preclusion orders and rulings preventing the Creightons from utilizing photographs depicting the exact area where Creighton fell, which photographs support the presence of defects where ice would form and, precluding the Creightons from establishing issues of notice concerning foreseeable hazards in the parking lot?

The Creightons' Brief at 5-6 (trial court answers omitted; party designations modified; issues re-ordered for ease of disposition).

**Issue One: Nonsuit Against Shan-Gri-La Sod Farm**

In their first issue, the Creightons argue that the trial court erred by granting Shan-Gri-La Sod Farm's motion for a nonsuit. According to the Creightons, because Don Keenan, Jr., who worked for Hanover, which owned and managed the property, testified that "there was an oral contract with

Shan-Gri-La Farm which would include treating the parking lot when there was a freeze and re-freeze," the Creightons established that Shan-Gri-La Sod Farm owed a duty to protect against hazardous conditions in the parking lot. The Creightons' Brief at 52-57.

We have said the following regarding nonsuits.

> As an initial matter, the Rules of Civil Procedure provide, in relevant part, that a trial court "may enter a nonsuit on any and all causes of action if, at the close of the plaintiff's case on liability, the plaintiff has failed to establish a right to relief." Pa.R.C.P. [] 230.1(a)(1); [**see also** Pa.R.C.P. 230.1(c)(1) (addressing nonsuits in a case against multiple defendants)]. Entry of a nonsuit is proper only if the factfinder, viewing all the evidence in favor of the plaintiff, could not reasonably conclude that the essential elements of a cause of action have been established. When a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement. A trial court can only grant a compulsory nonsuit in cases where it is clear that a cause of action has not been established and the plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence, resolving any conflict in the evidence in favor of the plaintiff.

> When considering a motion for a nonsuit, issues of credibility and the weight to be assigned to the evidence are not to be resolved by the trial judge, but must be left for the finder of fact to resolve at the close of the evidence. Ultimately, a motion for a non[]suit may be granted only where it is clear that no other conclusion could be reached under the evidence presented.

**MB Financial Bank v. Rao**, 201 A.3d 784, 788 (Pa. Super. 2018) (some citations and quotation marks omitted).

Upon moving for a nonsuit, counsel for Shan-Gri-La Sod Farm argued that there had been no mention of Shan-Gri-La **Sod** Farm in the Creightons'

case, and that the only reference was to "Shan-Gri-La Farm" or the additional defendant SGL, which was a separate corporate entity. N.T., 5/3/2018, at 265-69 (arguing the mere mention of "Shan-Gri-La Farm" did not establish liability for either Shan-Gri-La Sod Farm or SGL, which are two separate entities; one is a sod farm and the other is a snow and ice removal company).

In its Rule 1925(a) opinion, the trial court states that it granted the nonsuit in error because upon further review it realized Keenan did reference Shan-Gri-La Sod Farm during its testimony. Trial Court Opinion, 6/3/2019, at 21. However, the trial court contends the error was harmless, contending that because SGL and Shan-Gri-La Sod Farm were referred to interchangeably, and the jury did not find SGL to be negligent. Trial Court Opinion, 6/5/2019, at 21.

Our review of the record reveals that while counsel for the Creightons referred to Shan-Gri-La Sod Farm interchangeably with SGL in his opening statement,[6] generally thereafter only "Shan-Gri-La Farm" or "Shan-Gri-La"

---

[6] **See** N.T. 5/1/2018, at 15 ("You are going to hear there is another company by the name of Shan-Gri-La Sod Farm or SGL, and you are going to hear evidence in this case that part of their job was to make sure that parking lot was safe, if there is any slippery conditions caused by ice, snow and what's called refreezing.").

was mentioned.[7]  None of the parties is named "Shan-Gri-La Farm," and the

casual term "Shan-Gri-La" could be a shortened version of Shan-Gri-La Sod

---

[7] See for example the following exchanges between the Creightons' counsel and Keenan:

> Q. And you understood -- I want to talk to you for a second about **Shan-Gri-La Farm**. Okay?
>
> A. Okay.
>
> Q. Could you tell us whether or not there was an agreement that your dad had before he passed and then you have to have snow and ice remediation or issues addressed for the purposes of safety?
>
> A. After my father passed, Chip asked me if he could keep going with the site, and everybody was all happy with **Shan-Gri-La** and Chip, and I was happy with him. So I said sure just keep going. Do whatever -- if it's not broken, don't fix it.
>
> Q. And you are aware that **Shan-Gri-La Farm** was the company that performed snow and ice removal at Hanover Commons prior to your dad's death?
>
> A. I relied [*sic*] **Shan-Gri-La Farm** to Chip.

N.T., 5/1/2018, at 151-53 (emphasis added).

> Q. Sir, are you familiar with **Shan-Gri-La Farm**?
>
> A. Yes.
>
> Q. And you've known them for a lot of years; am I correct?
>
> A. Correct.
>
> Q. **Shan-Gri-La Farm** performed snow and ice removal at the Hanover Commons prior to your dad's death?

*(Footnote Continued Next Page)*

Farm or a lengthened version of SGL. Therefore, the evidence is ambiguous, and since the trial court should have afforded the Creightons "the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence, resolving any conflict in the evidence in favor of the plaintiff[s]," the granting of the nonsuit based upon the mention of "Shan-Gri-La Farm" only was in error. *See MB Financial Bank*, 201 A.3d at 788.

Similarly, we cannot agree with the trial court that the error was harmless. It is possible, as the trial court posits, that the jury would have found Shan-Gri-La Sod Farm not negligent because it found SGL not negligent. However, it is also possible that the jury found SGL not negligent based upon the dearth of references in the record to SGL specifically and it would have treated Shan-Gri-La Sod Farm differently. Had Shan-Gri-La Sod Farm's motion for a nonsuit not been granted, the jury may have determined that the references to Shan-Gri-La Farm were a shortened version of Shan-Gri-La Sod Farm, and Keenan's testimony was enough to

*(Footnote Continued)* ―――――――――――

A. Yes.

Q. And **Shan-Gri-La Farm** is the one now that you said Chip is still doing work for you?

A. Correct.

Q. And my understanding is that this is an oral contract?

A. Yes.

*Id.* (emphasis added).

establish liability for Shan-Gri-La.[8]  Accordingly, we determine that the trial court erred in granting Shan-Gri-La Sod Farm's motion for a nonsuit, and we remand for further proceedings as to Shan-Gri-La Sod Farm.

---

[8] Based upon Keenan's testimony, which was not rebutted by SGL or Shan-Gri-La Sod Farm, we cannot say that it is "clear that no other conclusion could be reached under the evidence presented" as to the duty of the snow-and-ice removal company, whichever entity that was, to be aware of and correct hazards in the parking lot.  **See** N.T., 5/1/2018, at 121-65 (stating that Hanover relied upon the snow-and-ice removal company's expertise as to snow and ice removal and correction of hazardous conditions; under the oral contract Hanover had with the company, the company did not need to get permission to fix a hazardous problem such as water pooling and refreezing; that Hanover would pay the bills the company sent without question; and the company had been to the property eight times during the winter season of 2013-2014 prior to Creighton's fall).

**Issue Two: Nonsuit Against Kiddie Academy**

In their second issue, the Creightons argue that the trial court erred in granting Kiddie Academy's motion for nonsuit. The Creightons argue that they established a duty on behalf of Kiddie Academy to ensure a safe parking lot and to correct any defects such as the divot where Creighton allegedly fell. The Creightons point to deposition testimony[9] by Mawson, the Kiddie Academy director, which allegedly establishes Kiddie Academy's duty because Mawson on her own accord sometimes walked the parking lot to look for hazards and salted the parking lot occasionally, including after Creighton told Mawson she fell on ice. The Creightons' Brief at 59-60.

The trial court granted Kiddie Academy's motion for nonsuit based upon its argument that the lease between Hanover and Kiddie Academy allocated responsibility for upkeep and safety of the parking lot to Hanover as landlord. *See* Trial Court Opinion, 6/1/2019, at 20 (relying upon the lease and *Leary v. Lawrence Sales Corp.*, 275 A.2d 32 (Pa. 1971) ("In Pennsylvania, it has long been established as a principle of landlord-tenant law that where the owner of real estate leases various parts thereof to several tenants, but retains possession and control of the common passage-ways and aisles which are to be used by business invitees of the various

---

[9] The Creightons claim the trial court prohibited them from referencing this testimony at trial based upon its allegedly erroneous motion *in limine* rulings.

- 13 -

tenants, the obligation of keeping the common aisles safe for the business invitees is imposed upon the landlord and not upon the tenants, in the absence of a contrary provision in the lease or leases")).

This Court has summarized ***Leary*** as follows.

> In [***Leary***], the owner of a shopping center retained possession and control of the central aisle of a grocery store in the shopping center complex, but the grocery store nevertheless had its employees clean debris from that central aisle. While in that central aisle, the plaintiff slipped and fell on debris on the floor. 275 A.2d at 33. The plaintiff argued that the grocery store was liable because it "voluntarily assumed the duty of keeping safe the entrance and exit aisle to its grocery store," ***id.*** at 36, but the Supreme Court rejected that argument. The Court concluded that the shopping center had not (1) "ever released its control" over the central aisle, (2) elected to reduce the cleaning services it was obligated to provide under the lease, or (3) agreed that the grocery store would "keep the area clean." ***Id.*** Therefore, despite the store's actions, there was insufficient proof of a voluntary assumption by the grocery store of a duty that belonged to the shopping center.

***Newell v. Montana West, Inc.***, 154 A.3d 819, 839 (Pa. Super. 2017) (parallel citations omitted).

The Creightons neither discuss ***Leary*** nor cite to any law supporting their argument. Thus, their argument is underdeveloped and therefore waived. ***See Bombar v. West American Ins. Co.***, 932 A.2d 78, 94 (Pa. Super. 2007) (finding appellant's issue waived where it set forth no relevant authority supporting its position). Even if they had not waived this issue, it would not merit them relief. The lease allocated responsibility of the parking lot to Hanover. Even assuming *arguendo* that the trial court should have permitted and considered evidence demonstrating that occasionally Mawson

- 14 -

walked through the parking lot to look at the conditions and put salt down, based upon *Leary*, there still was insufficient proof of a voluntary assumption by Kiddie Academy of a duty that belonged to Hanover. Accordingly, no relief is due.

## Issue Three: Jury Instructions

In reviewing the Creightons' challenge to the jury instructions, we bear in mind the following.

> Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law[,] which controlled the outcome of the case. Error in a charge occurs when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Conversely, a jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations.
>
> The proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.
>
> In other words, there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law.

*Pledger by Pledger v. Janssen Pharm., Inc.*, 198 A.3d 1126, 1146 (Pa. Super. 2018). "[W]e are mindful that a trial court is bound to charge only on that law for which there is some factual support in the record." *Levey v. DeNardo*, 725 A.2d 733, 735 (Pa. 1999) (citation omitted).

During its instruction to the jury, the trial court read Pennsylvania Standard Civil Jury Instruction 18.90, Owner Occupier's Duty of Care (Ice or Snow on Abutting Public Sidewalk or Walking Surface), which is known colloquially as the hills-and-ridges doctrine. Specifically, the trial court instructed the jury that

> [t]o establish liability upon the landowner, the [Creightons] must prove that each of the following three essentials [was] present. First, that ice and snow had accumulated on the walking surface in ridges or elevations that unreasonably obstructed travel and were a danger to persons traveling on the walk. Second, that the defendant property owner knew or should have known of the existence of such conditions. Third, that it was the dangerous accumulation of ice and snow that caused [Creighton] to fall.

N.T., 5/7/2018, at 111-12.

Following the instruction, the Crieghtons promptly objected to the trial court's use of this instruction, but the trial court overruled the objection. *Id.* at 125-26. On appeal, the Creightons argue that the trial court erred by reading this charge to the jury because it set forth a burden of proof that the Creightons did not have to meet. The Creightons' Brief at 28-31. They point out that the charge was not discussed during the charging conference and none of the defendants requested its use. *Id.* The Creightons also contend the facts of the case did not support use of the instruction since there was no evidence of slippery conditions in general on the day in question. *Id.* at 29-30.

In its Rule 1925(a) opinion, the trial court admits that it "inadvertently used the 18.90 instruction and had not previously discussed it with counsel

during the charging conference." Trial Court Opinion, 6/3/2019, at 16. The trial court contends that notwithstanding its mistake, no relief is due because the instruction did not create prejudice. When the jury submitted a question about the definition of negligence to the trial court during its deliberations, the trial court responded by reading the general negligence instruction without any mention of the hills-and-ridges doctrine, thereby clarifying to the jury that "the reasonable person negligence standard applied outside the consideration of the type of snow/ice accumulation involved." *Id.* at 16-17.

The hills-and-ridges doctrine is a legal principle that protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to accumulate unreasonably in ridges or elevations. *Harmotta v. Bender*, 601 A.2d 837, 842 (Pa. Super. 1992). This doctrine, "as defined and applied by the courts of Pennsylvania, is a refinement or clarification of the duty owed by a possessor of land and is applicable to a single type of dangerous condition, *i.e.*, ice and snow." *Wentz v. Pennswood Apts.*, 518 A.2d 314, 316 (Pa. Super. 1986). Because snow and ice are common in Pennsylvania, the owner of land is not liable for all injuries due to snow and ice; "the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove [the snow and ice] when it is in a dangerous

condition." ***Collins v. Philadelphia Suburban Dev. Corp.***, 179 A.3d 69, 73-76 (Pa. Super. 2018) (citation omitted).

> In order to recover for a fall on an ice or snow covered surface, a plaintiff must show:
>
> > (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; [and] (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

***Id.*** (citation omitted).

The hills-and-ridges doctrine is not applicable in all situations involving snow and ice, and "is subject to a number of [] significant exceptions." ***Harmotta***, 601 A.2d at 841-42. The doctrine precludes liability only where "the accident occurred at a time when general slippery conditions prevailed in the community as a result of recent precipitation." ***Williams v. Shultz***, 240 A.2d 812, 813-14 (Pa. 1968). "[P]roof of hills and ridges is not required when the hazard is not the result of a general slippery condition prevailing in the community, but of a patch of ice." ***Harmotta***, 601 A.2d at 841-42, citing ***Tonik v. Apex Garages, Inc.***, 275 A.2d 296 (Pa. 1971) (holding that the doctrine was inapplicable to a fall that had occurred due to ice, which had formed in a crack on a sidewalk otherwise free of ice and snow and without recent precipitation) and ***Williams***, 240 A.2d at 814 (holding that the trial court erred by requiring plaintiff to prove hills and ridges in situation

involving "a specific, localized, isolated patch of ice" hidden by leaves on a sidewalk without recent precipitation).

The Creightons' theory is premised upon the notion that the Hanover-owned "parking lot has potholes, divots, depressions, and defects in which water would pool [and freeze]." The Creightons' Brief at 19. They contend there were no general slippery conditions that day, rendering the hills-and-ridges doctrine inapplicable. *Id.* at 30. However, Hanover claims that because Creighton testified that there was a white coating on the parking lot that could have been frost or snow, she opened the door to invocation of the hills-and-ridges doctrine.

Based on the "background of the evidence in the particular case," *see Pledger*, 198 A.3d at 1146, we do not agree with Hanover. The Creightons did not produce a weather expert, and the only testimony about the weather came from Mawson, the director of Kiddie Academy; Keenan, who worked for Hanover; and Creighton. Creighton told Mawson that she had fallen on ice in the parking lot and took Mawson to the place where she fell, where Mawson observed a small patch of ice. N.T., 5/2/2018, at 105-06, 163. Mawson did not see other spots of ice around this area. *Id.* at 140. Mawson testified that there was a "white glaze" on the parking lot, which she attributed to "remnants of salt being on the parking lot." *Id.* at 150. Mawson does not recall what the weather was like in the days leading up to this day. *Id.* at 153. She does not recall it snowing that day, and the area

where Creighton had fallen was not wet. *Id.* at 143, 172. She recalls it being cold and "wintery," and stated there could have been snow on the grass adjacent to the parking lot. *Id.* at 145.

Creighton testified that it was not snowing or raining during her drive to Kiddie Academy that morning. N.T., 5/3/2018, at 23. The roads were clear, and there was nothing that was slippery, dangerous, or hazardous. *Id.* at 23, 173. She did not have to clean her windshield or shovel her walkway at home that morning. *Id.* at 173. She does not recall if it had been raining or snowing the day before her fall. *Id.* Creighton testified, "when I got out of my car [in the parking lot outside Kiddie Academy] there was a white -- what appeared to be a white coating. I don't know if it was frost. I didn't know if it was snow. [T]here was a white coating across the parking lot." *Id.* at 172. Creighton did not know at first what had made her fall, but when she was on the ground, she observed a "divot in the ground where like water seemed to have pooled and had frozen." *Id.* at 27. However, Creighton admitted that she did not know the source of the patch of ice, and she did not know if the weather caused the ice to form or if it was caused by something else like a person spilling something, which then froze. *Id.* at 113-14. She described the temperature that morning as being

"freezing cold," but she did not know if at the time of her fall the temperature was above or below freezing.[10]  **Id.** at 173.

Creighton's testimony does not clearly establish whether or not there was snow or ice outside of the patch of ice where she fell.  But even if one believes that the white coating in the parking lot was snow or frost as opposed to a glaze from old salt as Mawson indicated, the testimony of Mawson, Keenan, and Creighton suggest the absence of "general slippery conditions prevail[ing] in the community as a result of recent precipitation." **Williams**, 240 A.2d at 813-14.  Particularly where none of the parties requested the instruction, the instruction was not discussed during the charging conference, and the trial court admits that it read the instruction in error, we decline to find there is factual support in the record for the charge. **Levey**, 725 A.2d at 735.

After reviewing the trial court's jury charge in its entirety, we also do not agree with the trial court that any prejudice from reading the instruction was cured by the trial court's reiteration of the general reasonable person standard to the jury.  The trial court erroneously informed the jury that the Creightons had to meet a burden they did not have.  **See Williams**, 240 A.2d at 814 (remanding for new trial after trial court erroneously required plaintiff to prove hills and ridges in situation involving "a specific, localized,

---

[10] In contrast, Keenan testified that he was surprised to hear there was ice in the parking lot because it was "a warm day."  N.T., 5/1/2018, at 62.

isolated patch of ice"). It never told the jury to disregard the earlier hills-and-ridges instruction. The trial court's reading of the general negligence standard to the jury without connecting it to the mistaken jury instruction simply does not negate the prejudice from the erroneous instruction. Therefore, we are constrained to vacate the judgment as to Hanover and SGL, and remand for a new trial.

## CONCLUSION

Based on the forgoing, we affirm the entry of nonsuit to Kiddie Academy, vacate the entry of nonsuit against Shan-Gri-La Sod Farm, vacate the judgment in favor of Hanover and SGL, and remand for further proceedings in accordance with this memorandum.[11]

Nonsuit as to Kiddie Academy affirmed. Nonsuit as to Shan-Gri-La Sod Farm vacated. Judgment vacated as to Hanover and SGL. Case remanded for proceedings in accordance with this memorandum. Jurisdiction relinquished.

---

[11] Because we remand for a new trial, the evidentiary issues presented in the Creighton's fourth issue are moot, and we do not consider them.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 7/17/20